The UNITED STATES of America, Plaintiff-Appellee,

v.

Clinton Ladon COOPER, Defendant-Appellant.

No. 90-8581.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1991.

Michael L. Scanes, Waco, Tex. (court-appointed), for defendant-appellant.

Mark R. Stelmach, LeRoy M. Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before REYNALDO G. GARZA, WIENER, and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

In this criminal appeal, the Defendant–Appellant, Clinton Ladon Cooper, argues that his conviction for the federal crime of unlawful possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871, should be reversed and remanded, with instructions to suppress statements he made to a federal agent during custodial interrogation, and evidence of a sawed-off shotgun seized from his car. Cooper also contends that due process requires disclosure of the identity of an individual who informed the police that Cooper robbed a convenience store, and that his conviction must be overturned, and the charge dismissed, because the Fifth Amendment's double jeopardy clause prohibits successive prosecutions of the state crime of aggravated robbery and the federal crime of unlawful possession of an unregistered firearm.

Agreeing with the district court's findings concerning Cooper's challenges based on custodial interrogation, identity of the confidential informant, and double jeopardy, we affirm. Disagreeing with the district court's determination that the police had probable cause to search Cooper's car for a sawed-off shotgun, we nevertheless affirm that court's denial of Cooper's motion to suppress that evidence, finding that the seizure of Cooper's car as evidence or an instrument of crime was proper under the automobile exception to the Constitution's prohibition against unreasonable searches and seizures. The warrantless inventory search following the evidentiary seizure of Cooper's car in which the fire-

arm was found also met constitutional muster.

## I. FACTS AND PROCEDURAL HISTORY

Mart, Texas is a small community only a few miles from the city of Waco, Texas. On July 14, 1989, about 12:00 midnight, the police in Waco received a telephone call from an informant stating that Cooper was a "suspect" in a convenience store robbery in Mart, and that Cooper's car could be found parked in front of a two-story, multi-family residence in Waco. The informant described Cooper's car as a ragged, blue four-door Plymouth. The Waco police received the information about two hours after the robbery. (The Waco police later testified at the federal pre-trial suppression hearing that the informant was not a witness to the robbery, but had heard of the robbery from Cooper himself.)

The Waco police then contacted the McLennan County Sheriff's Office, which in turn contacted the police in Mart. The Mart police confirmed the informant's information about the convenience store robbery and told the Waco police that an arrest warrant had issued for Cooper. The Mart police also confirmed that Cooper's car had a "paper tag" (temporary license) in the window. The Waco police officers located the car at the address furnished by the informant and at first conducted roving surveillance in an unmarked car, commencing about 12:30 a.m. on July 15. At one point, the car identified as Cooper's left the parking area without being observed by the Waco police officers. When they observed the return of the car, the Waco officers decided to undertake fixed surveillance, although they did so from a distance of about two and one half blocks.

At 4:30 a.m., some four hours after roving surveillance began and one half hour after fixed surveillance was undertaken, unidentified persons drove the Plymouth out of the parking area. The Waco officers pulled the car over after it had gone about two and one half blocks. The officers later testified that they stopped the car to arrest Cooper, who they believed to be in it, for the convenience store robbery. Cooper was not in the car, however. Instead, the car was occupied by two women, one of whom told the Waco officers that she was "going with" Cooper. The women told police that the car was indeed Cooper's, and that they had taken it in order to locate a relative, who was with Cooper. A temporary license posted on the rear window also showed that the car was Cooper's.

At this time, the Waco officers, again communicating through the McLennan County Sheriff's Office, advised Mart that Waco had Cooper's car but not Cooper, and asked Mart what should be done with the car. The Mart police instructed the Waco officers to seize the car "[a]s an instrument of a crime," and to call a wrecker "and have the vehicle towed in." Following Waco Police Department procedures, the Waco officers conducted an inventory search of the car's contents before turning the car over to the wrecker for towing to the station. In the trunk they found a sawed-off shotgun. Cooper was arrested the next day and charged with the state crime of aggravated robbery.

Six days after an attorney had been appointed to represent Cooper on the state aggravated robbery charge, a federal agent visited Cooper in jail. The federal agent did not inform Cooper's counsel that he wished to interrogate Cooper. Besides, when asked, Cooper told the federal agent that he did not know whether he was represented by counsel. The federal agent advised Cooper of his Fifth Amendment rights, including his right to have an attorney present during custodial interrogation. Cooper nevertheless waived his right to have counsel present and stated that he received the shotgun from a friend, whose name Cooper would not reveal, to have its stock fixed. When the federal agent asked if Cooper was involved in the convenience store robbery, he said he was not.

Cooper was convicted of the state crime of aggravated robbery and sentenced to prison. On November 30, 1989, shortly after Cooper began serving his sentence,

he was mistakenly released from state prison. On December 12, 1989, Cooper was indicted by a federal grand jury on one count of unlawful possession of an unregistered firearm. Before trial, Cooper moved for (1) suppression of evidence from the search of his car, (2) suppression of evidence of his statements to the federal agent, (3) discovery of the informant's identity, and (4) dismissal of the federal charge based on double jeopardy. At the pre-trial suppression hearing, the district court denied all four motions. Cooper was convicted by a jury and sentenced to thirty months imprisonment, to be served consecutively with the state sentence.

## II. ANALYSIS

### A. FIFTH AND SIXTH AMENDMENT RIGHTS TO COUNSEL

*1. Invocation of Sixth Amendment right to counsel does not constitute automatic invocation of Fifth Amendment right*

■ Cooper contends that the federal district court should have excluded statements made to the federal agent during custodial interrogation because, when Cooper asked for counsel at his arraignment on the state aggravated robbery charge, which constituted an assertion of his Sixth Amendment right to counsel,[1] he automatically asserted his Fifth Amendment right.[2] Under the rule in *Edwards v. Arizona,*[3] once an accused invokes his Fifth Amendment right to counsel, no further custodial interrogation may occur unless initiated by the accused—even if, as here, the accused was advised of his rights and chose to waive them. Because the Fifth Amendment right is not offense specific, the *Edwards* rule applies even when the interrogation is based on different offenses or is conducted by different law enforcement authorities.[4]

At the time appellate briefs were filed in this case, a number of circuits disagreed on whether an accused's assertion of the Sixth Amendment right to counsel on a specific offense automatically constitutes an invocation of the Fifth Amendment's non-offense-specific right to counsel. The Fifth and Second Circuits had ruled, in *Jordan v. Watkins,*[5] and *U.S. v. Roberts,*[6] respectively, that an accused does not automatically assert his Fifth Amendment right to counsel simply by invoking his Sixth Amendment right. Other Circuits held to the contrary, finding that the Supreme Court's language and disposition in *Michigan v. Jackson,*[7] require that doubts about the scope of an accused's assertion of his right to counsel be resolved in favor of protecting the constitutional right.[8]

1. The Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

2. The Fifth Amendment right to counsel arises from the prophylactic rights set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which are intended to counteract the "inherently compelling pressures" of custodial interrogation and thus guarantee the Fifth Amendment right that "[n]o person … shall be compelled in any criminal case to be a witness against himself."

3. 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (holding "having expressed his desire to deal with the police only through counsel, [an accused] is not subject to further interrogation by the authorities until

counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police").

4. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

5. 681 F.2d 1067 (5th Cir.1982), vacated on other grounds, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986), on remand, 518 So.2d 1186 (Miss.1987) (en banc).

6. 869 F.2d 70 (2d Cir.1989).

7. 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986).

8. *Cervi v. Kemp,* 855 F.2d 702 (11th Cir.1988); *U.S. v. Wolf,* 879 F.2d 1320 (6th Cir.1989); and *U.S. ex rel. Espinoza v. Fairman,* 813 F.2d 117 (7th Cir.1987).

The recent Supreme Court decision, *McNeil v. Wisconsin,*[9] resolves this dispute in a way that implicitly affirms this circuit's decision in *Jordan v. Watkins.* The defendant in *McNeil* was arrested for armed robbery and was represented at the bail hearing by a public defender. Later, while still in jail on the armed robbery offense, the defendant was questioned by police on several occasions about various unrelated crimes, including murder. Before each interrogation, the defendant was informed of his *Miranda* rights, including his Fifth Amendment right to counsel, but in each instance elected to waive them. Using incriminating statements made in these interrogations, the defendant was ultimately convicted of crimes unrelated to armed robbery.

On appeal, the defendant in *McNeil* claimed that his courtroom appearance with an attorney on the initial charge of armed robbery—an unambiguous invocation of his Sixth Amendment right to counsel for that offense—also constituted an invocation of his Fifth Amendment right to counsel at all custodial interrogations. Justice Scalia, however, writing for the Court, rejected the defendant's argument, holding as a matter of fact and policy that invocation of the offense-specific Sixth Amendment right to the assistance of counsel for the armed robbery offense is not an automatic invocation of the non-offense-specific Fifth Amendment right to counsel.[10] Rather, the Fifth Amendment right to counsel is invoked, and the *Edwards* rule applies, only when an accused " 'ha[s] *expressed*' his wish for the particular sort of lawyerly assistance that is the subject of *Miranda.*"[11] And this "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in deal-ing with custodial interrogation by the police."[12] An accused's assertion of his Sixth Amendment right to counsel cannot *imply* an assertion of the *Miranda* 'Fifth Amendment' right.[13]

In this case, although Cooper accepted representation in state court on the specific charge of aggravated robbery, he did not request that counsel represent him in unrelated future custodial interrogations. He did not even make a statement that can reasonably be construed as a desire for such representation. Neither did Cooper request the presence of counsel when the federal agent advised him of his constitutional rights before commencing the custodial interrogation. Instead, Cooper stated that he understood that he had a right to counsel, was uncertain whether he had appointed counsel, but was nevertheless willing to talk with the federal agent without one. We therefore hold that Cooper's request for appointed counsel in state court was not sufficient to invoke his Fifth Amendment right to counsel, that the federal agent properly informed Cooper of his Fifth Amendment right to counsel prior to the custodial interrogation, and that Cooper knowingly and voluntarily waived this right.[14]

*2. Exclusion of all the statements at the federal trial*

At oral argument to this court and in supplemental briefs, Cooper asserted that *McNeil* actually supports his position because it affirms the rule in *Michigan v. Jackson* that after the Sixth Amendment right has been invoked, statements obtained from the accused during subsequent police-initiated custodial interrogation re-

**9.** —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

**10.** *McNeil,* 111 S.Ct. at 2208.

**11.** *Id.* at 2209 (emphasis in original), quoting *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884.

**12.** *Id.* (emphasis in original).

**13.** *Id.* 111 S.Ct. at 2209–10.

**14.** See *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612 (stating "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently"). See also *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it").

garding that specific charge are inadmissible. He argues that, unlike the facts in *McNeil*, wherein the pending offense was armed robbery and the new offense was an unrelated murder, the state and federal offenses in this case are interrelated and involve the same course of conduct. Cooper claims that the same evidence that was used to convict him on the state charge was also used against him on the federal charge. Therefore, he contends, his Sixth Amendment right attached to *both* the federal and state offenses. Cooper observes, moreover, that the federal agent in fact questioned him about both offenses.

█ Cooper's first claim, that his Sixth Amendment right to counsel was violated when the federal agent questioned him about the robbery, is captious at best. Even assuming the federal agent erred when he questioned Cooper about the state offense, that error is harmless because, as the government points out, it never introduced the statement when it offered the federal agent's testimony. At the federal trial, the federal agent testified to three statements made by Cooper during the custodial interrogation: (1) that he "received this particular firearm from a friend of his;" (2) that he "would not reveal the friend's name;" and (3) that he had possession of the shotgun because he was going "to fix the stock to the firearm." [15] It was Cooper's own counsel who introduced the statement when he asked the federal agent whether he questioned Cooper about the convenience store robbery. The federal agent responded that he had, and that Cooper "said that he had nothing to do with the robbery." Cooper's counsel, in his argument to the jury, then referred to Cooper's statement denying participation.

█ We also reject Cooper's second claim that *all* of his statements to the federal agent—concerning both the pending state charge and the subsequent federal charge—should be excluded from the federal trial because the federal offense was so *inextricably intertwined* with the state offense that his right to counsel for the state charge attached as well to the federal. In *Maine v. Moulton*, the Supreme Court emphasized that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." [16] The Supreme Court made clear that police may investigate crimes to which the Sixth Amendment had not yet attached, declaring that "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." [17]

Recently, a number of courts have interpreted the Supreme Court's language and disposition in *Moulton* to mean that the Sixth Amendment prohibits use of incriminating statements about uncharged crimes that are extremely closely related to the charged crime. For example, in *People v. Clankie*,[18] the Illinois Supreme Court, in a

---

**15.** The federal agent testified to several additional statements at the suppression hearing: that Cooper "didn't have anything to do with the armed robbery," but "that he had possession of that particular firearm at one time or another;" he "received it [the shotgun] from a friend," whom he did not reveal, to "fix the stock;" and he did not know how the shotgun got in the trunk.

**16.** 474 U.S. 159, 180 n. 16, 106 S.Ct. 477, 489 n. 16, 88 L.Ed.2d 481 (1985).

**17.** *Id.* at 180, 106 S.Ct. at 489.

**18.** 124 Ill.2d 456, 125 Ill.Dec. 290, 530 N.E.2d 448 (1988). *Clankie* based its conclusion that "some technically distinct, formally charged of-

fenses are actually so closely related to certain offenses for which formal charges have not been made that the right to counsel for the charged offense cannot constitutionally be isolated from the right to counsel for the uncharged offense" on the fact that the Supreme Court in *Moulton* vacated *"all"* of defendant Moulton's convictions—burglary and theft— even though at the time of the surreptitious recording, formal charges on the burglary offense had not been commenced." *Id.* 125 Ill. Dec. at 293, 530 N.E.2d at 451 (emphasis in original). *Clankie* also noted that "[t]his same principle has been implicitly recognized, though without discussion, in *Brewer v. Williams[ ],* 430 U.S. 387 [97 S.Ct. 1232, 51 L.Ed.2d 424] [1977]." *Id.* Also see *People v. Hoskins,* 168 Ill.App.3d

well-reasoned opinion, suppressed incriminating statements made to a police informant concerning a burglary charge because that charge was extremely closely related to pending burglary charges. Unlike the case at hand, however, all the charges in *Clankie* were *extremely* closely related, involving the same crime of burglary, victim, residence, time span, and sovereign. Here, the federal and state crimes concern different conduct, although, efficiently for the governments, both prosecutions could use much of the same evidence. Neither was the federal agent's testimony in this case the direct product of the Sixth Amendment violation—it was not, to use the standard metaphor, fruit of the poisonous tree.[19]

## B. FOURTH AMENDMENT SEARCH AND SEIZURE

Cooper argues that there was no probable cause to search his car because the sole reason the police stopped it was to arrest him and he was not in it. The government responds that the warrantless seizure and subsequent search of Cooper's car did not violate his Fourth Amendment rights because the police had probable cause to believe (1) the shotgun was in the car, and (2) the car *itself* was evidence of crime. The district court did not reach the question of the car being seized as evidence, but found that the police had probable cause to search for the shotgun. The district court therefore refused to exclude the shotgun as evidence.

Both parties agree that the initial stop of Cooper's car was proper because the Mart police had an arrest warrant for Cooper and the Waco officers who stopped the car knew it fit the description of Cooper's car and thus had reason to suspect that Cooper was in it.[20] At issue, however, is the search of the car after the initial stop.

■ The determination of whether police had probable cause to conduct a warrantless search or seizure or both involves a mixed question of law and fact.[21] In reviewing the district court's denial of Cooper's motion to suppress, this court must accept the district court's factual findings unless they are clearly erroneous or influenced by an incorrect view of law.[22] The evidence is viewed in the light most favorable to the prevailing party, in this instance the government.[23] Nevertheless, the ultimate question of the legality of the search or seizure of Cooper's car is a question of law alone and thus subject to *de novo* review.[24]

■ Probable cause is determined by an objective test: it cannot be established simply by showing that the police subjectively believed that probable cause existed; likewise, the subjective belief of the police that they did not have probable cause does

---

904, 119 Ill.Dec. 612, 523 N.E.2d 80 (1988) (holding uncounseled statements inadmissible in murder trial because the Sixth Amendment had attached to an aggravated battery charge concerning the same victim); and *U.S. v. Mitcheltree,* 940 F.2d 1329, 1343 (10th Cir.1991) (concluding that "when a deliberate sixth amendment violation occurs concerning pending charges, the government may not use defendant's uncounseled incriminating statements at trial of those or very closely related subsequent charges"), citing *Moulton,* 474 U.S. at 180, 106 S.Ct. at 489 and *Brewer,* 430 U.S. at 398–99, 97 S.Ct. at 1239–40. But see *People v. Dotson,* 214 Ill.App.3d 637, 158 Ill.Dec. 349, 574 N.E.2d 143 (1991) (finding murder charge based on use of weapon not so closely related to misdemeanor weapons charge that Sixth Amendment right extended to second offense).

**19.** See *Mitcheltree,* 940 F.2d at 1342 (considering defendant's claim under a derivative evidence theory).

**20.** An investigatory stop of an automobile, based on reasonable suspicion that criminal activity has occurred or is about to occur, is permitted under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Also see, e.g., *U.S. v. Amuny,* 767 F.2d 1113, 1122 (5th Cir.1985).

**21.** *U.S. v. Muniz–Melchor,* 894 F.2d 1430, 1439 n. 9 (5th Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

**22.** *Id.* at 1433–34, quoting *U.S. v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984).

**23.** *U.S. v. Reed,* 882 F.2d 147, 149 (5th Cir.1989); and *U.S. v. Lanford,* 838 F.2d 1351, 1354 (5th Cir.1988).

**24.** *Muniz–Melchor,* 894 F.2d at 1433.

not preclude the government's showing that there was.[25] "[P]robable cause to search an automobile exists when 'trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband.' "[26] "[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.' "[27] This court should not weigh "[e]ach individual layer of information," but should instead consider the "laminated total" of available facts.[28] In the instant situation, given the close working relationship between the Mart police and Waco police, the existence of probable cause depends on the collective knowledge of both law enforcement agencies.[29] But even though the Waco police are entitled to act on the strength of the Mart police's instructions, those instructions must be supported by probable cause.

### 1. Probable cause to search for the shotgun

█ Constitutional law is well established that if the combined knowledge of Mart and Waco police was such that they had probable cause to believe that the shotgun was in Cooper's car, the Waco police could have lawfully conducted a warrantless search.[30] But the record does not establish that *either* the Mart or Waco officer had such knowledge at the time Cooper's car was seized and searched. And, contrary to the district court's determination, the record does not establish that the Mart and Waco police in fact searched Cooper's car because they believed it might contain the shotgun.

On the one hand, prior to seizing Cooper's car, the Waco police knew from their informant and the Mart police that Cooper was a suspect in the armed robbery of a convenience store. Both police departments knew that a sawed-off shotgun was used in the robbery. And both police departments knew that the car stopped belonged to Cooper—the car's occupants said so, and Cooper's name was on the temporary license in the car's window. On the other hand, the Waco police testified at the suppression hearing that as late as 3:00 a.m.—only an hour and a half before their 4:30 a.m. seizure and search of Cooper's car—they did not know that a witness had reported seeing Cooper take a shotgun out of his car's trunk in the vicinity of the convenience store. More importantly, the record shows that the Waco police still did not have this critical information when they pulled Cooper's car over—in fact, the Waco police testified that they believed there was no probable cause to search the car. Obviously, a belief that the robbery weapon was in the car's trunk would have supplied probable cause. The Waco police also admitted at the suppression hearing that they had no reason to believe that Cooper's car contained other evidence of the armed robbery.

In summary, the record indicates that, when the car was stopped, neither the Mart police nor the Waco police—nor or both collectively—had probable cause to believe the shotgun was in the trunk of Cooper's car. The government has the burden of showing that the collective knowledge of the Mart and Waco police was sufficient to

**25.** *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

**26.** *U.S. v. Shaw,* 701 F.2d 367, 376 (5th Cir. 1983), quoting *U.S. v. Edwards,* 577 F.2d 883, 895 (5th Cir.1978).

**27.** *Id.,* quoting *Smith v. U.S.,* 358 F.2d 833, 837 (D.C.Cir.1966).

**28.** *Id,* citing *Edwards,* 577 F.2d at 895.

**29.** *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); and *U.S. v. Webster,* 750 F.2d 307, 323

(5th Cir.1984) (stating "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is some degree of communication the two") (internal quotation omitted).

**30.** *U.S. v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); and *California v. Acevedo,* — U.S. —, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

constitute probable cause.[31] We find that the government did not meet that burden.

## 2. Probable cause to seize the car as evidence

The government's second argument is that because Cooper's car *itself* was evidence of crime it was lawfully seized and searched without a warrant.[32] Although we agree, we regret that on appeal the government has not articulated any specific legal theories to support its assertions. The government states only that it is the Waco Police Department's "customary procedure to impound vehicles used in some type of offense," and that the actions of the Waco police were justified by "exigent circumstances." [33] Because the government does not direct our attention to a particular state or federal forfeiture or impoundment statute,[34] we assume that it relies on some exception to the Fourth Amendment's warrant requirement.

We note at the outset that this circuit has addressed the warrantless search of cars in countless cases, and has approved the warrantless seizure of cars under forfeiture statutes.[35] This case appears to be the first time, however, we have squarely addressed the issue of the warrantless seizure of a car from a public place, without legal basis in a forfeiture statute, when the car *itself* is evidence or an instrument of crime.[36]

■ We believe that seizure of a car as evidence of crime is consistent with the so-called "automobile exception" to the Fourth Amendment's warrant require-

---

**31.** See *U.S. v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985).

**32.** The government intimates that the police had the right to seize the car because its occupants were using it without Cooper's permission and therefore "had no right to continue to proceed." Presumably, the government believes that this gave the police the right to impound the car and then conduct an inventory search. We find this argument to be meritless. On cross-examination, the Waco police testified that the car's occupants were not arrested for theft because, among other reasons, one of the occupants was "going with" Cooper. Furthermore, the Waco police stated that "even if they took the car without his [Cooper's] permission, no charges would have been filed. We knew where they lived, that if Mr. Cooper wished to pursue a theft or something like that, that we would take it up, at that time. It wasn't as if they were going somewhere."

Absent a legitimate investigatory reason to impound the car, or a reason to exercise the police's well-recognized non-investigatory "community caretaking" functions, see *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), the police had no more, and perhaps less, right to use the car than did Cooper's friends. Here, there is no evidence in the record, nor did the district court conclude, that the police were acting in the interests of public safety and as part of their community caretaking functions. The record is clear that the car was seized as evidence or instrument of crime.

**33.** The government may intend to argue that seizure is valid because of exigent circumstances. The government contends that "the officers could not just allow the [car's occupants] to proceed after the stop" because, among other things, (1) "the car was sought by

Mart police as evidence," and (2) the occupants' "announced intention was to find Cooper, and the officers could not allow them to assist a fugitive, particularly where they believed that more robberies could occur." It is unclear from these statements, however, whether the government intends to rely on exigent circumstances *alone,* or in conjunction with some other doctrine, such as the automobile exception. We do not address the merits of exigent circumstances as an independent basis for seizing Cooper's car because sounder methodology requires us to analyze the seizure under the specific rules for automobiles.

**34.** See, e.g., *U.S. v. Hamilton,* 931 F.2d 1046, 1054 (5th Cir.1991) (upholding warrantless seizure of Cadillac under Mississippi drug forfeiture law).

**35.** In *U.S. v. One 1978 Mercedes Benz,* 711 F.2d 1297 (5th Cir.1983), this circuit, adopting the approach set forth by the Fourth Circuit in *U.S. v. Kemp,* 690 F.2d 397 (4th Cir.1982), concluded that the government may seize a car under federal forfeiture statutes upon probable cause and without exigent circumstances. Warrantless seizures pursuant to forfeiture statutes are distinguishable from the instant case, however, because "maturity of the forfeiture interest vests the right to possession in the United States." *Id.* at 1302.

**36.** See, e.g., *U.S. v. Pruett,* 551 F.2d 1365, 1369–20 (5th Cir.1977) (finding warrantless seizure of car parked at residence invalid even though police had probable cause to believe it was used to transport drugs). Cf. *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir.1988) (requiring probable cause for warrantless seizure of truck).

ment,[37] although the instant seizure does not fit that exception's existing contours precisely.[38] In *California v. Carney*,[39] the Supreme Court confirmed that exigent circumstances and diminished expectations to privacy are the two bases for the automobile exception. Exigent circumstances, however, are simply to be assumed if the automobile is readily mobile. The Court explained:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an

immediate search before the vehicle and its occupants become unavailable.[40] Therefore, under the automobile exception after *Carney*, as long as the vehicle is readily mobile, "probable cause *alone* suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable." [41]

■ We believe that probable cause alone also suffices to justify seizing a vehicle on a public street as evidence or instrument of crime. As a warrant is not required when the police have probable cause to believe that the car *contains* evidence of crime,[42] there is little sense in requiring a warrant before seizing a car when the police have probable cause to believe the car itself *is* such evidence or is an instrument of crime.

■ Therefore, we hold that the police may seize a car from a public place without a warrant when they have probable cause to believe that the car itself is an instrument or evidence of crime. Our holding is broadly consistent with the *decisions* of several other circuits,[43] and with the

**37.** We do not believe that it is appropriate to analyze this *public* seizure case as within the "plain view exception" because, as the Supreme Court explained in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), that exception "consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband." *Id.* at 326–27, 107 S.Ct. at 1153–54, citing *Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639 (1980). *Hicks* teaches us that the plain view exception means only that if a car may be lawfully seized in a public place without a warrant, it also may be seized in a private place, under the circumstances set forth in *Horton v. California*, 496 U.S. 128, ——, 110 S.Ct. 2301, 2305–06, 110 L.Ed.2d 112, 120–21 (1990). But, as noted, Cooper's car was not seized from a private place but from the public streets, thus making the plain view doctrine as explicated in *Hicks* inapplicable.

**38.** This is because, unlike a warrantless *search* of a car, the warrantless *seizure* of a car implicates possessory as well as privacy interests. But we note that while the warrantless seizure of cars implicates important possessory interests, so does the warrantless seizures of private

property contained in cars—something the Court has long permitted given a showing of probable cause.

**39.** 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

**40.** *Id.* at 392–93, 105 S.Ct. at 2069–70.

**41.** *U.S. v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985) (emphasis in original).

**42.** Nor, we might add, do we see much sense in requiring a warrant for the seizure of a car from a public place, while finding a warrantless arrest constitutional when done in a public place and with probable cause. See *U.S. v. Watson*, 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976). After all, an arrest—which, of course, is but the seizure of an individual—involves a significantly greater intrusion on Fourth Amendment interests than does the seizure of a car. See *U.S. v. Bush*, 647 F.2d 357, 370 (3d Cir.1981).

**43.** See, e.g., *Bagley*, 772 F.2d at 491 (reasoning that "if the existence of probable cause alone justifies the warrantless search of a vehicle parked in a public place, certainly a warrantless seizure of such a vehicle, based only on probable cause, also falls within the automobile exception"). Accord *Autoworld Specialty Cars, Inc. v. U.S.*, 815 F.2d 385, 389 (6th Cir.1987)

*results* reached by other courts in like cases.[44] As a caution, however, we emphasize that, absent probable cause to believe the car contains contraband or evidence of crime, a warrantless seizure must be based on probable cause to believe the car itself is an instrument or evidence of crime, not merely that the car's owner committed a crime.[45]

■ In the instant case, there is sufficient evidence to find that the Mart and Waco police had probable cause to believe that Cooper's car was both evidence and an instrument of crime. The Waco police testified at the suppression hearing that after stopping the car and ascertaining that it was indeed Cooper's, they informed the Mart police that they "had the vehicle that apparently was used in the robbery" and asked what should be done with it. On cross-examination by Cooper, the Waco police indicated that the Mart police informed the McLennan County Sheriff's Department, who in turn informed Waco, that a blue four-door Plymouth was involved in the robbery, albeit the Waco police's testimony on this point is a bit confused. In addition, a witness to the convenience store robbery testified at the federal trial that immediately before the robbery he saw Cooper near a four-door, light blue car. Finally, in response to Waco's request for instructions, Mart advised Waco to call the wrecker and "have the vehicle impounded as evidence of crime." Thus, Waco's testimony establishes adequately that, prior to seizing and impounding the car, both police forces had information linking it to the robbery.

Once we determine that the police had probable cause to seize Cooper's car as evidence of crime, no doubt remains that the subsequent inventory search was permissible. Clearly, police may make a warrantless inventory search of a legitimately seized car, as long as the inventory search is conducted according to established procedures of the searching police department.[46] As the purpose of an inventory search is "to protect an owner's property while it is in the custody of the police, to insure against claims [of the owner against the police] of lost, stolen, or vandalized property," [47] the Waco police acted appropriately by conducting a routine inventory search before turning Cooper's car over to a private wrecker.[48]

The Waco police testified, and Cooper does not contest, that the Waco police have a standard procedure for conducting an inventory search of the entire car, including the trunk, when a car is impounded. Nothing in the record indicates, moreover, that the inventory search was not sufficiently regulated to satisfy the Fourth Amendment: [49] The Waco police testified at the trial on the federal offense that it has a set procedure for conducting inventory searches, and that this procedure requires documenting the contents of the entire vehicle. Because the record reflects that the procedure was followed, the inventory

(upholding warrantless seizure of automobiles from showroom because cars were readily mobile and there was probable cause to associate cars with criminal activities). But see *U.S. v. Alexander*, 835 F.2d 1406, 1410–11 (11th Cir. 1988) (rejecting *Bagley* and requiring minimal showing of exigency).

**44.** See, e.g., *U.S. v. Belt*, 854 F.2d 1054, 1055–56 (7th Cir.1988) (affirming warrantless seizure of car as evidence of aggravated assault pursuant to the Illinois Police Department's impoundment policy without questioning impoundment policy's constitutional status). Also see *State v. Mitchell*, 300 N.C. 305, 266 S.E.2d 605 (1980) (holding that a car reasonably believed to be the fruit, instrumentality or evidence of a crime can be seized whenever found in plain view).

**45.** See *U.S. v. Hernandez*, 901 F.2d 1217, 1220 (5th Cir.1990) (cautioning that a warrantless

search of car cannot be based "merely upon probable cause to believe that a crime has been committed").

**46.** *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

**47.** *Id.* at 384, 96 S.Ct. at 3104.

**48.** *Texas v. Brown*, 460 U.S. 730, 734, 103 S.Ct. 1535, 1539, 75 L.Ed.2d 502 (1983) (on-the-spot inventory search).

**49.** See *Florida v. Wells*, 495 U.S. 1, ——, 110 S.Ct. 1632, 1635–36, 109 L.Ed.2d 1, 7 (1990) (finding inventory search of closed containers unconstitutional because the police had no policy on opening closed containers).

search was lawful, and the shotgun discovered during that search is not subject to suppression.

## C. IDENTIFICATION OF THE INFORMANT

 Cooper next urges this court to find that he was denied due process and confrontational rights when the district court refused his motion to discover the identity of the Waco police's informant. Cooper essentially argues that the close temporal proximity between the robbery and the confidential informant's call to the Waco police, occurring only about two hours after the robbery, indicates that the informant may have witnessed the robbery, participated in the robbery, or talked to someone who witnessed or participated in the robbery. Thus, contends Cooper, knowledge of the informant's identity may have added a "key element to his defense." The government responds that the informant was not a witness to or participant in the robbery, but that he obtained his information from talking to Cooper. The informant was not called as a witness. Even though the district court never explicitly found that the informant was not involved in the robbery, the implicit basis for its ruling was that the informant obtained his information from talking to Cooper, not from direct participation in the robbery either as a perpetrator or witness.

In *Roviaro v. U.S.*,[50] the Supreme Court articulated a test for weighing a defendant's need for disclosure against the government's interest in withholding the confidential informer's identity.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.[51]

This circuit, in interpreting *Roviaro*, established a three-pronged test to determine when disclosure is mandated.[52] The first prong looks at whether the informant participated in the criminal activity. In the context of this prong, we have determined in countless cases that "*Roviaro* does not require the disclosure of the identities of 'mere tipsters.' "[53] The second prong examines the relationship between the defendant's asserted defense and the probable testimony of the informant. The third prong looks at the government's interest in non-disclosure.

The Waco police testified at the suppression hearing that the informant was a mere tipster. Evidence in the record tends to confirm this—nothing in the record suggests, for example, that there was more than one robber, or that there were witnesses to the robbery who remained unidentified. And the Waco police testified that the informant took no part in the robbery. The record does not show, however, that the district court's determination that the informant was a mere tipster was clearly erroneous or that the ruling itself amounts to an abuse of discretion.[54] Regardless, Cooper fails to establish the required nexus between his asserted defense and the informant's probable testimony, offering instead only conjecture about the possible relevancy of the informant's testimony.[55] Inasmuch as Cooper failed to provide evidence supporting the first two prongs of this circuit's test, we need not consider the strength of the government's

---

**50.** 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

**51.** *Id.* at 62, 77 S.Ct. at 628.

**52.** See, e.g., *U.S. v. Vizcarra–Porras,* 889 F.2d 1435, 1438 (5th Cir.1989), citing *U.S. v. Toro,* 840 F.2d 1221, 1232 (5th Cir.1988).

**53.** See, e.g., *U.S. v. Fryar,* 867 F.2d 850, 856 (5th Cir.1989).

**54.** *Vizcarra–Porras,* 889 F.2d at 1438.

**55.** *U.S. v. Gonzales,* 606 F.2d 70, 75 (5th Cir. 1979) (noting "mere conjecture or supposition about the possible relevancy of informant's testimony is insufficient to warrant disclosure").

interest in preserving the confidentiality of the informant's identity.[56]

Cooper insists, nevertheless, that the district court was required to hold an *in camera* hearing to determine if the informant witnessed or participated in the robbery. While an *in camera* interview may be helpful in determining the informant's status and in balancing the parties' interests,[57] and in some cases may even be necessary,[58] this circuit does not require the district court to hold an *in camera* interview whenever the defendant requests disclosure of the informant's identity.[59] We note, moreover, that the record does not indicate that Cooper requested an *in camera* hearing, and this court has held in other cases that a district court is under no obligation to order one *sua sponte*.[60]

## D. DOUBLE JEOPARDY

■ Cooper makes two claims under the Fifth Amendment's double jeopardy clause. First, he asserts that *Grady v. Corbin*,[61] the Court's recent decision on the application of the double jeopardy clause in successive prosecutions, overrules, or at least calls into substantial question, the dual sovereign doctrine. Cooper therefore argues that the federal charge against him must be dismissed because, when prosecuting him for the federal crime, the federal government had to prove conduct that was the basis for the state prosecution for aggravated robbery, in violation of the double

jeopardy test in *Blockburger v. U.S.*[62] We find this argument without merit. Recently, in *U.S. v. Devine*,[63] this circuit determined that the well-established dual sovereign doctrine, which permits federal and state governments to punish a defendant for the same offense without violating the double jeopardy clause, is not subject to the *Grady* test. *Grady* sets forth a test for determining when successive prosecutions *by the same sovereign* violate the double jeopardy clause—it does not concern the dual sovereign doctrine, as amply evidenced by the fact that the case never mentions the dual sovereign doctrine.

■ Cooper's second double jeopardy argument is that even if *Grady* does not overrule or modify the dual sovereign doctrine, his case fits a possible exception to that doctrine, suggested by the Supreme Court in *Bartkus v. Illinois*,[64] for cases involving collusion between federal and state prosecutors. In *Bartkus*, the Supreme Court suggested in dictum that an exception to the dual sovereign doctrine might exist when prosecution by one sovereign is used as a cover or tool for a successive prosecution by another sovereign. This might occur, for example, if prosecution by one sovereign is merely a cover for an otherwise barred prosecution by the other.[65] Such collusion between federal and state prosecutors could lead to a conclusion that there are not, in fact, two sovereigns, in which case traditional double jeopardy

**56.** See, e.g., *U.S. v. Kerris*, 748 F.2d 610 (11th Cir.1984).

**57.** *U.S. v. Alexander*, 559 F.2d 1339, 1344 (5th Cir.1977), citing *U.S. v. Doe*, 525 F.2d 878 (5th Cir.1976).

**58.** See *U.S. v. Fischer*, 531 F.2d 783, 787–88 (5th Cir.1976); and *U.S. v. Freund*, 525 F.2d 873, 876–78 (5th Cir.1976).

**59.** *Alexander*, 559 F.2d at 1344; and *Freund*, 525 F.2d at 878.

**60.** *Alexander*, 559 F.2d at 1344.

**61.** 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (Double jeopardy clause prohibits subsequent prosecution in which the government must prove as an essential element of the charged offense conduct for which the defendant has already been prosecuted.).

**62.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**63.** 934 F.2d 1325, 1343, reh en banc denied, 943 F.2d 1315 (5th Cir.1991). Accord *U.S. v. Pungitore*, 910 F.2d 1084, 1106 n. 19 (3rd Cir.1990) (declining to re-examine the dual sovereignty doctrine in light of *Grady* ). See also *U.S. v. Farmer*, 924 F.2d 647, 650 (7th Cir.1991) (noting *Grady* involves same-sovereign prosecutions); and *U.S. v. Louisville Edible Oil Products, Inc.*, 926 F.2d 584, 587 (6th Cir.1991) (explaining that double jeopardy clause bars only additional prosecution by the same sovereign).

**64.** 359 U.S. 121, 123–24, 79 S.Ct. 676, 677–78, 3 L.Ed.2d 684 (1959).

**65.** *U.S. v. Raymer*, 941 F.2d 1031, 1037 (10th Cir.1991).

analysis would apply. Although this circuit has never actually held that such an exception exists,[66] it has stated on numerous occasions that when a defendant claims collusion between federal and state law enforcement officials, the defendant has the burden of producing evidence to show a nonfrivolous double jeopardy claim.[67] Once a prima facie case is shown, the burden of persuasion shifts to the government.[68]

Cooper contends that federal prosecutors indicted him for unlawful possession of an unregistered firearm in order to help state authorities locate and re-apprehend him after he was mistakenly released from the state prison. Cooper offers as evidence of collusion the close temporal proximity between his mistaken release on November 30, 1989, and the date on which the federal government brought this indictment against him, December 12, 1989. We agree with the district court that this is not sufficient to state a prima facie case of collusion. We fail to see, moreover, how Cooper's indictment on the federal charge could assist the state's prosecution, given the fact that Cooper had already been convicted on the state charge. Clearly, if the federal government had no independent interest in Cooper's prosecution, it could have simply dropped the federal charge once Cooper was re-apprehended. Finally, we note that the federal government's interest in Cooper predates his release from jail— Cooper's Fifth Amendment and Sixth Amendment claims arise from his interrogation by a federal agent on July 27, 1989, months before his mistaken release from state prison.

## III. CONCLUSION

The decision of the district court to deny Cooper's motions to suppress uncounseled statements made to the federal agent during custodial interrogation, disclose the police informant's identity, and dismiss the federal charge on the basis of double jeopardy, is AFFIRMED. The decision of the district court to deny Cooper's motion to suppress evidence of the shotgun seized from his car is also AFFIRMED, albeit for reasons different from those expressed by that court.

66. See, e.g., *U.S. v. Harrison,* 918 F.2d 469, 474–75 (5th Cir.1990).

67. See e.g., *Id.* at 475, citing *U.S. v. Stricklin,* 591 F.2d 1112, 1117–18 (5th Cir.1979).

