John J. **TEIXERIA**, Petitioner,

v.

Charles **GREINER**, Superintendent, Sing Sing Correctional Facility, Respondent.

No. Civ.A. 97–2068–TCP.

United States District Court, E.D. New York.

May 29, 2002.

Joyce C. London, New York City, pro se.

Karen Petterson, James M. Catterson, Jr., District Atty. of Suffolk County, Rivehead, NY, for Respondent.

John Teixeria, Dannemora, NY, pro se.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

### I. Introduction

John J. Teixeria ("Teixeria"), proceeding *pro se*,[2] brings this petition pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, to challenge his conviction before the County Court of Suffolk County of murder in the second degree on June 13, 1990, for which he was sentenced to a term of twenty-five years to life in prison. Teixeria argues that he was arrested on a bench warrant[3] for failing to pay traffic tickets,

---

1. Of the District of Massachusetts, sitting by designation.

2. Teixeria originally requested counsel to assist him in the prosecution of his habeas petition. The Court allowed this motion [Docket No. 39]. After being appointed counsel, however, Teixeria petitioned this Court for reassignment of counsel, which this Court denied [Docket Nos. 41, 43]. At that time, Teixeria was informed that he could either proceed with the attorney who had been appointed to represent him, or proceed *pro se* [Docket No. 43]. Teixeria elected to proceed *pro se* by filing an affidavit in which he reiterated his grounds for relief, and referred to himself as a *pro se* petitioner [Docket No. 44]. This Court therefore treats him as a *pro se* litigant.

3. A bench warrant is defined by the New York Criminal Procedure Law as "a process of a criminal court in which a criminal action is pending; directing a police officer, or a uniformed court officer ... to take into custody a defendant in such action who has previously been arraigned upon the accusatory instrument by which the action was commenced, and to bring him before such court." N.Y.Crim.Proc.Law § 1.20(30). The purpose of such a warrant is "to achieve the court appearance of a defendant in a pending criminal action for some purpose other than his initial arraignment in the action." *Id.*

but that the real purpose of the arrest was to interrogate him with respect to the homicide for which he was ultimately tried and convicted. According to Teixeria, this interrogation under false pretense, commenced without initiating judicial proceedings against him on the homicide charges, deprived him of his right to counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

Teixeria's petition for relief under section 2254 was originally lodged with this Court on April 22, 1997. The Court initially dismissed the petition on the ground that by waiting until almost a year after the enactment of AEDPA to file the petition (362 days, to be precise), Teixeria had delayed unreasonably in filing his petition. *See* Order of May 29, 1997 (Platt, J.) [Docket No. 10]. On September 25, 1998, the Second Circuit vacated this order in light of *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998), in which it held that habeas petitioners whose convictions became final before the effective date of AEDPA have a one-year grace period after that effective date in which to file a habeas petition, *id.* at 103. Teixeria's petition was timely under the grace period announced in *Ross*. The Court therefore resuscitated Teixeria's petition and is now prepared, after a brief exposition of the relevant facts, to reach the merits of the petition.

## II. Background

On October 21, 1988, Kerry Cairns Goldrick ("Goldrick") was found dead at her home in Northport, New York, as a result of being stabbed and strangled. Resp't's Opp'n at 1.[4] Police investigating Goldrick's death learned that on October 20, she was seen with a man known as "John Boy," described as a man whose left arm did not completely straighten. *Id.*; Pet'r's Mem. at viii. In the ensuing days, Northport police noted that Teixeria matched the description they had been given of "John Boy." Resp't's Opp'n at 1–2. On October 27, a palm print was found on Goldrick's refrigerator that matched Teixeria's fingerprints. *Id.*

At the time, Teixeria had a bench warrant outstanding for failing to appear at a hearing with respect to traffic tickets that he had failed to pay. According to Teixeria, the fact of the outstanding bench warrant was serendipitous for the police, as it allowed them to bring him into custody and question him regarding Goldrick's death. Pet'r's Mem. at viii. Shortly before 6:00 p.m. on November 2, Northport police encountered Teixeria on the street, took him into custody pursuant to the bench warrant, and questioned him briefly regarding the outstanding traffic tickets. Pet'r's Mem. at ix; Resp't's Opp'n at 2.

**4.** All of the relevant facts are taken from Teixeria's Petition for Writ of Habeas Corpus ("Pet.") [Docket No. 1], Teixeria's Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet'r's Mem.") [Docket No. 2], the Government's Memorandum of Law in Opposition to Teixeria's Petition ("Resp't's Opp'n") [Docket No. 31], and Teixeria's Affidavit in Response and Opposition to the Government's Memorandum ("Pet'r's Reply Aff.") [Docket No. 44].

Teixeria argues that the Government's Memorandum of Law in Opposition to his Petition ought be stricken and disregarded by this Court because the Government was eight months late in submitting its opposition to Teixeria's petition. Pet'r's Reply Aff. ¶ 2. He is wrong as matter of fact. This Court's most recent scheduling order, issued after the Second Circuit vacated this Court's original order dismissing the petition, directed the Government to submit its opposition, along with Teixeria's reply, if any, within sixty-five days of the scheduling order. *See* Order of July 7, 1999 (Platt, J.) [Docket No. 27]. The Government submitted the requested documents on August 18, 1999 [Docket Nos. 28, 29, 31], comfortably within the deadline imposed by the Court.

The police gave Teixeria his *Miranda* warnings, and asked him to sign a card acknowledging that he understood the warnings, which he did, *id.*, although Teixeria claims that he only agreed to sign the card after being physically abused and placed in fear for his well being, Pet'r's Mem. at ix.[5]

The interrogation quickly turned to the subject of Goldrick's death. *Id.;* Resp't's Opp'n at 2–3. After approximately four hours of interrogation, Teixeria began making inculpatory statements regarding Goldrick, at which point he was placed under arrest for murder. Approximately an hour and a half later, after again acknowledging his *Miranda* protections and waiving them, Teixeria signed a written confession. *Id.* at 3. Early in the morning on November 3, the police videotaped Teixeria's confession.

The Government states, and Teixeria does not dispute, that at no time during the prolonged interrogation did Teixeria ask to speak to an attorney or to discontinue the questioning. *Id.* at 4.

## III. Discussion

Teixeria argues that the surreptitious use by the police of the outstanding bench warrant on the traffic tickets to question him about the Goldrick homicide deprived him of the right to the assistance of counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States. Pet. ¶ 12(A); Pet'r's Mem. at 1.[6] The Court reads Teixeria's petition to comprise two separate but often interrelated claims: (1) that the police interrogation at issue deprived him of his Sixth Amendment right to counsel;

---

**5.** Teixeria does not assert that the statements he made to the police were obtained in violation of his Fifth Amendment privilege against self-incrimination. He did raise this claim at trial, but the trial court found his claim to be patently incredible. *People v. Teixeria,* Indictment No. 1623–88, slip op. at 3 (Suffolk County Ct. Jan. 5, 1990) (Sherman, J.); *see also* Resp't's Opp'n at 4. Teixeria's bald assertion that he was physically abused in a single sentence of the factual portion of his memorandum in support of his petition does not, in the Court's view, obligate the Court, as part of its duty to read *pro se* petitions liberally, to comb through the state court record to revive this argument on his behalf. *See Williams v. Kullman,* 722 F.2d 1048, 1051 (2d Cir.1983) ("[I]t would be unwise to saddle district judges [in habeas proceedings] with the burden of reading through voluminous records and transcripts in every case.... [H]abeas corpus is a special proceeding to right wrongs, not a routine procedure to search for them.") (citation and internal quotation marks omitted). Even if this Court's obligation to Teixeria as a *pro se* litigant did extend this far, the fact that the trial court addressed this argument and rejected it as matter of fact based on the evidence before it is reason enough for this Court to deny Teixeria relief on this basis. 28 U.S.C. § 2254(d).

**6.** The Government argues that Teixeria has failed to articulate a *federal* constitutional claim, which is required to obtain relief under section 2254. Resp't's Opp'n at 6. While the Government is correct as matter of law that a prisoner seeking relief under section 2254 must assert that his continued detention violates the federal constitution, laws, or treaties, 28 U.S.C. § 2254(a), the Government is wrong as matter of fact that Teixeria does not present a federal constitutional claim: he does, *see, e.g.*, Pet'r's Mem. at 1, and he did in his supplemental *pro se* brief filed with Appellate Division of the New York Supreme Court when he sought direct appellate review of his conviction.

The Court will therefore consider whether the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States afford Teixeria any relief. To the extent that New York may provide to its citizens a right to counsel that is more robust than that found in the federal constitution as matter of state constitutional or criminal procedure law, *see* Resp't's Opp'n at 7 (suggesting as much), such a right will not aid Teixeria in his petition for relief under section 2254 based on the federal constitution.

and (2) that police interrogation at issue deprived him of his Fifth Amendment right to counsel.

■ Teixeria's right to counsel under the Sixth Amendment was not violated by the interrogation at issue here. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy ... the Assistance of Counsel for his defence." U.S. Const. amend. VI. Two features of this constitutional guarantee are particularly important here. First, the right does not attach until "the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). Second, the right is offense-specific: the fact that the right has attached with respect to one offense does not mean that it has attached with respect to another offense for which judicial proceedings have not yet been initiated. *Maine v. Moulton*, 474 U.S. 159, 180 & n. 16, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).[7]

■ Here, assuming that Teixeria's Sixth Amendment right attached with respect to his traffic offenses, there is no doubt the right had not yet attached with

respect to the Goldrick homicide: at the time he spoke with the police, he had not been indicted on that charge, nor had any other judicial proceedings been initiated against him with respect to the homicide. As the Supreme Court stated in *Moulton*, "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." 474 U.S. at 180, 106 S.Ct. 477; *see also* Wayne R. LaFave et al., *Criminal Procedure* § 6.4(e), at 325 (3d ed. 2000) ("Clearly this test [for when the right to counsel attaches] is not met merely because the defendant has been arrested without a warrant, nor is it met merely because the investigation has focused upon the defendant."). As Teixeria's Sixth Amendment right to counsel had not yet attached with respect to the Goldrick homicide, the police did not violate that right when they interrogated him about that offense.

■ Likewise, Teixeria's right to counsel under the Fifth Amendment was not violated by the interrogation at issue here. Although the Fifth Amendment does not expressly guarantee any right to counsel as does the Sixth Amendment, the

---

7. Teixeria argues that there is an exception to this rule in cases where an offense for which the right to counsel has attached and an offense for which the right has not attached are "so inextricably intertwined ... that [the] right to counsel for the pending charge cannot ... constitutionally be isolated from [the] right for [the] uncharged offense." Pet'r's Mem. at 6 (citing *United States v. Hines*, 963 F.2d 255 (9th Cir.1992)). This narrow exception does not apply to this case, which involves two completely separate and unrelated offenses, one minor, one serious, committed at different times in different places, with only the same defendant in common between

them. *See Hines*, 963 F.2d at 257–58 (declining to apply exception to general rule that the Sixth Amendment is offense-specific, because "[a]lthough [the uncharged offense involved] the same offense, the place, time, and persons were all different"); *United States v. Cooper*, 949 F.2d 737, 743–44 (5th Cir.1991) (holding that exception did not apply to uncharged federal offense of unlawful possession of unregistered firearm, even though defendant already had pending state charge of armed robbery involving the same weapon). Whatever the precise contours of this exception may be, it has no application here.

Supreme Court has interpreted the Fifth Amendment privilege against self-incrimination to require that, once a suspect is in custody and subject to interrogation, the police apprise the suspect of his right to contact an attorney, and to have the attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 467–71, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once a suspect asserts this Fifth Amendment, or *Miranda*-based, right to counsel, the interrogation must cease until counsel is physically present during the interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (holding that the right to have counsel present means the right to have counsel physically present during the interrogation, not merely the right to consult an attorney by telephone). Importantly for Teixeria, this *Miranda*-based right to counsel is not offense-specific: once a suspect asserts this right to counsel, the police may not question him with respect to *any* offense. *Arizona v. Roberson*, 486 U.S. 675, 687–88, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). More importantly in this case, however, the *Edwards* rule applies only when "the suspect has expressed his wish for the . . . lawyerly assistance that is the subject of *Miranda*," *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (emphasis and internal quotation marks omitted), which means, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police," *id.* (emphasis omitted). In *McNeil*, the Supreme Court explicitly rejected the suggestion that "the defendant invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel on

the unrelated charge." *Id.* at 178–79, 111 S.Ct. 2204. (citation and internal quotation marks omitted).

■ *McNeil* dictates the outcome of Teixeria's *Miranda*-based right-to-counsel claim. There is no dispute about the fact that Teixeria never said anything to the police that could be construed as an assertion of his right to have counsel present during the questioning related to the Goldrick homicide. That the police took advantage of an outstanding bench warrant on a matter completely unrelated to the Goldrick homicide as a means of taking Teixeria into custody and questioning him about that homicide does not render the police conduct unconstitutional. In contrast to Sixth Amendment right-to-counsel claims, which often focus on whether the right has been waived once it attaches, *Miranda*-based right-to-counsel claims often focus on whether the right has been asserted. *See id.* at 178–79. Here, there is no dispute about the fact that Teixeria never asserted his right to counsel during questioning related to the Goldrick homicide. The police interrogation therefore did not violate his Fifth Amendment, or *Miranda*-based, right to counsel.

## IV. Conclusion

Teixeria's right to counsel under the Sixth Amendment was not violated in this case because it had not yet attached, as judicial proceedings had not been initiated against him with respect to the Goldrick homicide at the time of the interrogation. Teixeria's right to counsel under the Fifth Amendment was not violated in this case because he never asserted such a right after he was apprised of the protections afforded him by *Miranda*. The police conduct at issue here was merely an example of an aggressive investigation technique that appropriately observed (and perhaps capitalized upon) the limits of Teixeria's

right to have an attorney present during questioning related to the Goldrick homicide. Accordingly, Teixeria's petition for writ of habeas corpus under 28 U.S.C. § 2254 [Docket No. 1] is DENIED.