UNITED STATES of America, Plaintiff–Appellee,

*v.*

Santos MARTINEZ–PEREZ, and Jose Moises Rodriguez–Sanchez, Defendants–Appellants.

No. 89–2400.

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1990.

Lisa S. Brodyaga, Thelma O. Garcia, Harlingen, Tex., for defendant-appellant Martinez–Perez.

Timoteo E. Gomez, Brownsville, Tex. (Court-appointed), for defendant-appellant Rodriguez–Sanchez.

Richard A. Friedman, U.S. Dept. of Justice, Washington, D.C., Paula C. Offenhauser, Henry K. Oncken, U.S. Attys., Houston, Tex., for plaintiff–appellee.

Before RUBIN, GARWOOD and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Two defendants, each convicted of various offenses arising out of an alien smuggling operation, appeal. One challenges his conviction on the ground that the district court erroneously admitted deposition testimony at trial without first requiring the Government to demonstrate the witness's unavailability, in violation of his sixth amendment right to confront adverse witnesses and Federal Rule of Criminal Procedure 15(a). We agree, and reverse his conviction. The second defendant challenges only his sentence, claiming that the district court erred in making an upward departure from the Sentencing Guidelines on the ground that the Guidelines did not sufficiently account for his criminal histo-

ry. Again, we agree, and vacate his sentence.

### I

In late September, 1988, between fifty-five and seventy persons, predominantly Nicaraguan and Guatemalan nationals, paid a man known as Leonel to transport them to the United States and to obtain for them permits that would allow them to travel legally within the United States to their various destinations.

As Border Patrol agents Roy Pena and Anselmo Garza were driving down Boca Chica Boulevard in Brownsville, Texas, on September 28, they saw a large group of people heading north along the railroad tracks. While Agent Pena called for back-up units, Garza followed the group and saw them enter a nearby house. When Pena and the back-up units arrived moments later, Garza saw appellant Rodriguez, who was later identified as a Mexican national and the owner of the house, flee from the scene. The agents arrested sixty-eight undocumented aliens in the house. Rodriguez was arrested approximately five weeks later.

On October 8, government informant Luis Arias told Border Patrol Special Agent Luis Massad that appellant Martinez, a resident alien originally from Guatemala, might have been involved in the scheme to smuggle the sixty-eight undocumented aliens into the country. The morning of October 14, Massad set up surveillance of Martinez's residence on Jefferson Street in Brownsville. Through binoculars, he observed a taxi pass in front of the house twice; a few minutes later an individual whom Massad recognized as the passenger in that cab—later identified as Ronay Jiminez—approached the house on foot and gained admittance. Jiminez left fifteen minutes later, walking hurriedly. Massad stopped him and, after learning that Jiminez was an undocumented alien, arrested him. Massad seized three Nicaraguan passports and other documents from Jiminez's person.

Massad called for back up. He and three other agents then went to Martinez's house and were admitted by a maid. Martinez was at home; Massad advised him of his *Miranda* rights and asked for permission to search the house. Martinez consented to a search for persons. After finding some incriminating documents in plain view in Martinez's attic, Massad placed Martinez under arrest.

Martinez, Rodriguez, and five others were indicted on one count of conspiring to bring into and land aliens within the United States, 18 U.S.C. § 371, 8 U.S.C. § 1324(a)(1)(A) (1988); two counts of aiding and abetting the bringing into and landing of aliens within the United States, 18 U.S.C. § 2, 8 U.S.C. § 1324(a)(1)(A) (1988); and two counts of harboring aliens within the United States, 8 U.S.C. § 1324(a)(1)(C) (1988). Martinez was convicted on all counts. He was sentenced to fourteen months imprisonment on each count, to run concurrently, and three years of supervised release on each count, to run concurrently. The district court recommended that Martinez not be deported.

Rodriguez was convicted on two counts of harboring aliens within the United States. He was sentenced to three years imprisonment on each count, to run concurrently, and three years supervised release on each count, to run concurrently. In addition, the INS has placed a detainer on Rodriguez in order to initiate deportation proceedings upon his release from custody.

### II

### SANTOS MARTINEZ–PEREZ

Martinez asserts that numerous errors were committed in obtaining his conviction. Because we find that the district court committed reversible error in admitting a witness's deposition testimony at trial without first requiring the Government to demonstrate on the record that the witness was unavailable, we do not pass upon the other issues.

The Government's primary witness against Martinez was Sonia Rosales-de Sanchez, a Honduran national who was among the sixty-eight undocumented aliens

arrested at Rodriguez's house. Because her testimony was vital to the Government's case against Martinez, Rosales was detained in this country as a material witness. The district court, however, had issued a standing order, apparently relying on Federal Rules of Criminal Procedure 15(a)[1] and 46(g)[2], that all material witnesses in immigration cases were to be deposed and released within forty-five days. The district court's order, the validity of which is not before us, gave the Government the option of requesting an extension of time, but the Government failed to do so in this case. Rosales was deposed on November 16, 1988. All of the defendants were present and had the opportunity to cross-examine her. A magistrate, acting to enforce the district court's order, ordered Rosales released immediately after the deposition. The record does not reflect what happened to her thereafter.

Portions of Rosales's deposition were read to the jury as part of the Government's case-in-chief, with Special Agent Massad reading the words of Rosales; each defendant was permitted to read portions of any cross-examination he had conducted. In short, the procedure used by the district court to put Rosales's testimony before the jury was essentially the same as that used for admitting the deposition testimony of an unavailable witness in a civil case.

The Supreme Court has held that the sixth amendment's Confrontation Clause generally requires the Government to "produce, *or demonstrate the unavailability of,* the declarant whose statement it wishes to use against the defendant."[3] This same requirement is embodied in Federal Rule of Criminal Procedure 15, which governs the use of depositions at criminal trials. "[A] part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence *if the witness is unavailable,* as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence."[4] Rule 804(a) defines "unavailability" to include situations in which the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means."[5]

██ The Government adduced no evidence that Rosales was unavailable to testify at the trial; it introduced no evidence of any efforts to procure her presence;[6] the district court made no finding on the record that Rosales was in fact unavailable. The only pertinent facts included in the record are that Rosales was never subpoenaed to appear at trial and that she was never tendered a witness fee. As Rosales's testimony provided the only solid evidence linking Martinez to the conspiracy, and the only evidence of his intent to aid and abet the alien-smuggling-and-harboring offenses, the admission of the deposition testimony despite the Government's utter failure to establish the requisite predicate of unavailability was not, as the Government suggested at oral argument, harmless error.

██ The Government claims that "[a]ll parties and the court apparently were confident that the witness was outside the United States and beyond reach at the time of trial and there is no evidence to the contrary." To support this assertion, the Government points to a statement in the record by counsel for one of Martinez's codefendants with regard to Rosales: "I reserve my right to call her at this time,"

---

1. Rule 15(a) provides: "[i]f a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness."

2. Rule 46(g) requires the district courts to "exercise supervision over the detention of ... witnesses within the district ... for the purpose of eliminating all unnecessary detention."

3. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (emphasis added).

4. Fed.R.Crim.P. 15(e) (emphasis added).

5. Fed.R.Evid. 804(a)(5).

6. *Roberts,* 448 U.S. at 74–75, 100 S.Ct. at 2543–2544.

said counsel, "but she is unavailable." The Government also notes that none of the defendants objected to the deposition testimony on the grounds that the Government had failed to establish Rosales's unavailability as required by Criminal Procedure Rule 15(e) and Evidence Rule 804(a)(5).

We refuse to characterize the statement by counsel for Martinez's codefendant as "a concession or stipulation [by Martinez] on the issue" of unavailability. Even if, however, we were to accept the dubious proposition that the concession of counsel for a codefendant bound Martinez, there is no indication in the record that counsel meant anything more by stating that Rosales was "unavailable" than that she was not in the courthouse at that particular time.

■ As we have noted, Martinez's rights under the Confrontation Clause include the right to make the Government establish a deponent's unavailability before her deposition testimony is admitted into evidence. A knowing and voluntary waiver of that right cannot be implied from the unadorned statement of counsel for a codefendant. In addition, the fact that the Government's obligation to establish unavailability is of constitutional dimension means that Martinez's objection to the admission of the deposition testimony was properly preserved when he objected on Confrontation Clause grounds. No objection specific to Criminal Procedure Rule 15(e) or Evidence Rule 804(a) was necessary.

### III

### JOSE MOISES RODRIGUEZ–SANCHEZ

■ Rodriguez does not challenge his conviction on appeal. His only claim is that the district court erred in imposing a sentence more onerous than that provided for in the United States Sentencing Commission Guidelines Manual (1989), given the offense and his criminal history. Specifically, Rodriguez claims that the district

court erred in (1) failing to provide notice that it was considering an upward departure from the Guidelines, in violation of Federal Rule of Criminal Procedure 32(a)(1); [7] (2) finding that the Guidelines failed adequately to account for Rodriguez's "criminal involvement, particularly matters involving the same type of offense"; (3) making an unreasonable upward departure from the Guidelines; and (4) failing to state in open court its reasons for imposing a particular sentence.

The base offense level under Guidelines § 2L1.1(a) for harboring undocumented aliens is 9. Rodriguez was given a 2 level increase under § 2L1.1(b)(2) for having a prior conviction for transporting unlawful aliens within the United States, and a 2 level decrease under § 3E1.1(a) for acceptance of responsibility. Thus, Rodriguez's total offense level remained 9. He was assessed criminal history points for six prior convictions, making a total of 13 criminal history points, putting him in Criminal History Category VI. The Guidelines provided for a sentence of 21–27 months.

At sentencing, the district court determined that an upward departure was warranted and sentenced Rodriguez to 36 months on each of the two counts on which he was convicted, the sentences to run concurrently. The district court's only explanation for this action was: "The Court has departed a few months from the guidelines because the guidelines do not take into consideration appropriately your criminal involvement, particularly matters involving the same type of offense. In addition, the number of aliens involved in this case."

As we have repeatedly stated, "[w]hen a district court relies on section 4A1.3 to depart from the established guidelines, it should articulate its reasons for doing so *explicitly*.... [T]he court [should] identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure under section

---

7. Rule 32(a)(1) provides that "[p]rior to the sentencing hearing, the court shall provide the counsel for the defendant ... with notice of the probation officer's determination ... of the sentencing classifications and sentencing guidelines range believed to be applicable to the case."

4A1.3."[8] The district court did not do so in this case, and our review of the record has unearthed no reason to believe that the Guidelines did not adequately consider this defendant's criminal history. We therefore conclude that the district court erred in departing from the Guidelines on that ground.

■ First, all of Rodriguez's prior convictions of any significance were considered in calculating his Criminal History Category. The only prior conviction outside the limitations periods of § 4A1.1 was a petty shoplifting conviction in 1976.[9] While we have previously stated that offenses outside the limitations period may be considered in the district court's decision to depart from the Guidelines,[10] Rodriguez's one long-past misdemeanor conviction is hardly sufficient justification for departure.

The fact that Rodriguez had previously been convicted of transporting illegal aliens within the United States was also adequately considered. Rodriguez was assessed three criminal history points for that offense under § 4A1.1(a), plus two more under § 4A1.1(e) because his sentence for that offense ended less than two years prior to the commission of the instant offense. Thus, Rodriguez's prior conviction for transporting illegal aliens by itself moved him from Category IV to Category VI. In addition, his prior conviction increased the base offense level by two under § 2L1.1(b)(2). Had Rodriguez not committed the prior offense, he would have been sentenced at offense level 7 in Category IV; because he had done so, he was sentenced at offense level 9 in Category VI. In sum, Rodriguez faced the possibility of serving an *additional* thirteen months for this offense because he previously had been convicted of transporting

illegal aliens, and because his sentence for that conviction ended less than two years before he committed this offense.

Citing this court's decision in *United States v. Lopez–Escobar*,[11] the Government urges us to construe the district court's remarks regarding Rodriguez's criminal history as pertaining not to the mere facts of Rodriguez's criminal history and prior conviction for transporting aliens, but as pertaining to the substance of the alien-transporting offense, which also involved a "large" number of aliens (18), suggesting to the Government that it was actually a "smuggling" operation. We refuse to draw such an inference from the record.

Unlike *Lopez–Escobar*, the context of the district court's remarks in this case demonstrate conclusively that the court's primary concern was with the fact that Rodriguez had a substantial criminal history, not with the facts underlying any particular offense or offenses. At the beginning of the brief sentencing proceeding, the district court pointedly asked Rodriguez, "What are you trying to do? Spend the rest of your life in the penitentiary?" After Rodriguez asked for compassion and told the court he was trying to straighten out, the court responded, "Well, I hope you do, sir. One time or another you are going to have to do that. Because considering your background, any time you come to the courts your history is going to have a lot to do with what a judge is going to do or what a jury is going to do with you. I hope this time you do consider that." The court then proceeded to impose sentence. That is the sum total of the district court's remarks pertaining to Rodriguez's criminal history and his prior conviction for transporting aliens.

---

**8.** *United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989) (emphasis added); *accord, United States v. Rios*, 876 F.2d 24, 26 (5th Cir.1989); *United States v. Lopez*, 871 F.2d 513, 514–15 (5th Cir.1989).

**9.** The commentary to Guidelines § 4A1.1 provides that a prior conviction resulting in a sentence of imprisonment exceeding one year is not to be considered if such sentence was im-

posed more than fifteen years prior to the instant offense. A conviction resulting in a sentence of imprisonment of less than one year is not to be considered if such sentence was imposed more than ten years prior to the instant offense.

**10.** *See Lopez*, 871 F.2d at 515.

**11.** 884 F.2d 170, 172–73 (5th Cir.1989).

■ The Government also urges us to consider a number of other factors noted in Rodriguez's presentence report as justifying the district court's upward departure. The Government points particularly to the fact that, after Rodriguez's prior conviction for transporting aliens, he was not deported but was allowed to return to Mexico voluntarily. In spite of this merciful treatment, Rodriguez returned to this country illegally, and again became involved in the same sort of illegal activity.

We would certainly consider whether such factors justified the district court's decision—if only they were on the record as reasons for its departure from the Guidelines. We will not speculate about why the district court felt that the Guidelines inadequately considered the defendant's criminal history, and we will not supplement the district court's stated reasons with others that the defendant has had no opportunity to address. *See* Fed.R. Crim.P. 32(a)(1).

The district court's decision to depart from the Guidelines did not rest on the ground that Rodriguez's crime involved a large number of aliens; and we do not consider whether, if it had, the sentence would have been valid.[12] Nor did the district court impose a particular sentence on the basis of two separate guideline determinations and make it clear that either determination, standing alone, would have permitted the sentence imposed. In such a situation, if one of the determinations constitutes an incorrect application of the sentencing guidelines, and the other does not, it is by no means evident that the sentence was "imposed *as a result of* an incorrect application of the sentencing guidelines" within the meaning of 18 U.S.C. § 3742(f)(1) (emphasis added). We do not read *United States v. Stephenson*[13] to hold to the contrary. *Stephenson* condemns what amounts to the appellate court's determining what the district court might have done had it not committed the

error in question. *Stephenson* does not broadly command reversal whenever there has been an incorrect application of the sentencing guidelines but the sentence imposed is not the "result" of the error. As we have noted, the context of the court's remarks demonstrates that the court's primary concern was with the fact that Rodriguez had a substantial criminal history. The court's reference to the number of aliens involved appears to be essentially a makeweight or minor, collateral reinforcement for its sentencing decision reached initially and overwhelmingly on the basis of Rodriguez's prior criminal history. It is therefore clear that Rodriguez's sentence did result from the district court's incorrect application of the sentencing guidelines respecting Rodriguez's prior criminal history. In these circumstances, to affirm the sentence on the basis of the number of aliens involved in the present offense, rather than to remand for resentencing, would be to allow the proverbial tail to wag the dog. We, therefore, determine that the sentence "was imposed in violation of law or was imposed as a result of an incorrect application of the sentencing guidelines," and we "remand the case for further sentencing proceedings." 18 U.S.C. § 3742 (1988).

For the foregoing reasons, the conviction of appellant Santos Martinez–Perez is REVERSED and his case REMANDED to the district court for proceedings not inconsistent with this opinion. The sentence of appellant Jose Moises Rodriguez–Sanchez is VACATED and his case REMANDED for resentencing.

---

12. *See* Guidelines § 2L1.1 commentary; *Lopez–Escobar*, 884 F.2d at 173–74 (5th Cir.1989).

13. *United States v. Stephenson*, 887 F.2d 57, 62 (5th Cir.1989) (errors in sentencing not subject to harmless error analysis), *cert. denied sub nom., Goff v. United States*, — U.S. —, 110 S.Ct. 1151, 107 L.Ed.2d 1054 (1990).