UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.

JAMES Edward CARPENTER,
Defendant–Appellant.

No. 91–8381.

United States Court of Appeals,
Fifth Circuit.

June 9, 1992.

John P. Palmer, Naman, Howell, Smith & Lee, Waco, Tex. (Court-appointed), for defendant-appellant.

Mark L. Frazier, Asst. U.S. Atty., Richard L. Durbin, Jr., Ronald F. Ederer, U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

On appeal from a conviction for possession of a firearm by a convicted felon, Carpenter contends: [1] that the district court erred by denying his motion to suppress statements made after counsel was appointed for him in an unrelated state court case; [2] that the district court should have excluded all references to a "crack pipe" discovered next to the firearm in question; and [3] that the district court erred in making an upward departure of his sentence. We affirm.

## I. THE CONFESSION

Arrested on an outstanding warrant for a burglary charge, Carpenter was placed in the back seat of a police cruiser and transported to the county jail. Later that day, an officer discovered a firearm and crack pipe on the back seat floorboard of the police cruiser and notified a supervisor. Carpenter, the only arrestee transported in the police cruiser on that day, was the prime suspect.

Two officers approached Carpenter in the jail to inquire about the firearm. According to Carpenter, the officers promised him that if he provided information about the firearm, they would try to get the burglary charges dropped. The officers testified that they never made such a promise.[1]

Three days later, counsel was appointed for Carpenter in connection with the state burglary case, but the authorities did not notify his lawyer of the appointment for several days. In any event, Carpenter's appointed attorney did not speak with him until weeks later. In the interim, Carpenter was visited twice by Claire Redman, an agent with the Bureau of Alcohol Tobacco and Firearms. Agent Redman had received a report from the police department which indicated that Carpenter qualified as an armed career criminal. During her first visit with Carpenter, Agent Redman identified herself as a federal agent and informed Carpenter that she was there to speak with him about the firearm discovered in the police cruiser. Agent Redman advised Carpenter of his *Miranda* rights and obtained a signed waiver of his rights. Carpenter then confessed that the gun and crack pipe belonged to him. He explained that while he was handcuffed in the back seat of the police cruiser, he maneuvered his cuffed hands around his waist to remove the gun and pipe, and then kicked them under the front seat of vehicle.

Four days later, Agent Redman visited Carpenter a second time. She had reduced Carpenter's verbal statement to writing and asked him to make any corrections and sign it. He refused, claiming that he had fabricated the confession because the police officers had promised to get the burglary charges dropped if he confessed to possessing the firearm. He confirmed that the written statement prepared by Agent Redman accurately reflected what he had

---

1. The officers did not advise Carpenter of his *Miranda* rights prior to questioning him. However, none of the statements made by Carpenter during that interrogation were used against him.

told her four days earlier, but declined to sign it because it simply was not true.

Carpenter was eventually charged in federal court with possession of a firearm by a convicted felon. He moved the district court to suppress the confession on the ground that the appointment of counsel in the state burglary case precluded Agent Redman from interrogating him about the firearm. The district court denied the motion.

## A.

■ The question presented in this appeal is whether the appointment of counsel under the *Sixth Amendment* in connection with the charged burglary offense constituted an invocation by Carpenter of his *Fifth Amendment* right to have counsel present during the custodial interrogation about the firearm. Guided by the Supreme Court's decision in *McNeil v. Wisconsin,* — U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), and this circuit's decision in *United States v. Cooper,* 949 F.2d 737 (5th Cir.1991), we answer that question in the negative.

■ In *McNeil* the Supreme Court held that the invocation of the Sixth Amendment right to counsel, which attaches only "after the initiation of adversary judicial criminal proceedings," does not amount to a *per se* invocation of the Fifth Amendment right to have counsel present during custodial interrogations about uncharged offenses. *McNeil,* 111 S.Ct. at 2207–08 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). The Court reasoned that the Sixth Amendment only applies to the specific offense with which the suspect has been charged. Once the Sixth Amendment right to counsel attaches, it prohibits law enforcement officers from initiating interviews in connection with the charged offense. *Michigan v. Jackson,* 475 U.S. 625, 630–33, 106 S.Ct. 1404, 1408–09, 89 L.Ed.2d 631 (1986). With respect to an uncharged offense, however, the Sixth

Amendment right has not yet attached, for the Sixth Amendment is not triggered until formal adversarial proceedings have begun. Thus, the Sixth Amendment bar to interrogations about the charged offense cannot extend to interrogations about uncharged offenses. Law enforcement officers can interrogate a suspect about an uncharged offense without offending the Sixth Amendment.[2] *Id.*

■ Unlike the Sixth Amendment right to counsel, which applies only to the charged offense, the Fifth Amendment right to the assistance of counsel during custodial interrogations is not offense-specific. Once a suspect indicates that he wants the assistance of counsel during a custodial interrogation—a constitutional right guaranteed to him by the Fifth (not Sixth) Amendment, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)—law enforcement officers may not approach the suspect to interrogate him about the subject offense, *Edwards v. Arizona,* 451 U.S. 477, 482–84, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), or any other offense. *Arizona v. Roberson,* 486 U.S. 675, 681–83, 108 S.Ct. 2093, 2098–99, 100 L.Ed.2d 704 (1988). The Fifth Amendment shields the suspect from interrogation about *any* offense, charged or uncharged. *Id.* But a suspect must expressly invoke the Fifth Amendment shield. This the suspect can do by communicating his preference not to be interrogated without first receiving the assistance of counsel. Simply invoking the *Sixth Amendment* right to counsel with respect to a charged offense, however, does not constitute an exercise of a suspect's *Fifth Amendment* right to be represented by counsel during custodial interrogations about uncharged offenses. *McNeil,* 111 S.Ct. at 2207–08.

In *United States v. Cooper,* 949 F.2d 737 (5th Cir.1991), this court's first application of *McNeil,* we held that a "request for appointed counsel in state court was not sufficient to invoke [the] Fifth Amendment

---

**2.** We elaborate later on the prohibition of interrogations about uncharged, but extremely close-

ly related offenses. *See infra* at 740–41.

right to counsel" "in unrelated future custodial interrogations." *Id.* at 742. In *Cooper* police arrested the defendant for aggravated robbery and found a sawed off shot-gun in the trunk of his car. An attorney was appointed to represent the defendant in the aggravated robbery case. Six days later, a federal agent interrogated him about the firearm after administering the *Miranda* warnings. This court concluded that the federal agent did not violate the defendant's Fifth Amendment rights by interrogating him about the federal firearm offense even though counsel had been appointed in the state aggravated robbery case.

> In the case at bar, as in *Cooper,*
> although [Carpenter] accepted representation in state court on the specific charge of [burglary], he did not request that counsel represent him in unrelated future custodial interrogations. He did not even make a statement that can be reasonably construed as a desire for such representation. Neither did [he] request the presence of counsel when the federal agent advised him of his constitutional rights before commencing the custodial interrogation.

*Cooper,* 949 F.2d at 742. Having never invoked his Fifth Amendment right to have the assistance of counsel during custodial interrogations,[3] Carpenter's contention that the confession was extracted in contravention of the Fifth Amendment must fail.

### B.

■ *McNeil* and *Cooper* leave open one avenue for challenging the admissibility of

a confession when a defendant has invoked his Sixth Amendment right to counsel with respect to a charged offense but has not expressly invoked his Fifth Amendment right to have counsel present during custodial interrogations. If the charged and uncharged offenses are "so inextricably intertwined" or "extremely closely related," then the Sixth Amendment (not the Fifth Amendment) prohibits interrogation about the uncharged offense. *See Cooper,* 949 F.2d at 743 ("Recently, a number of courts have interpreted the Supreme Court's language and disposition in [*Maine v.*] *Moulton* [, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ] to mean that the Sixth Amendment prohibits use of incriminating statements about uncharged crimes that are extremely closely related to the charge crime."). Support for this rule is derived from the Supreme Court's decision in *Moulton,* vacating "all of defendant Moulton's convictions—burglary and theft— even though at the time of the surreptitious recording, formal charges on the burglary offense had not been commenced." *Id.* at 743 n. 18 (quoting *People v. Clankie,* 124 Ill.2d 456, 125 Ill.Dec. 290, 293, 530 N.E.2d 448, 451 (1988)). When the offenses are so closely related, the protections afforded by the Sixth Amendment, *see Michigan v. Jackson, supra,* will extend even to those offenses with respect to which the government has not yet initiated formal charges. *Cooper,* 949 F.2d at 743; *see also People v. Crane,* 145 Ill.2d 520, 165 Ill.Dec. 703, 585 N.E.2d 99 (1991).

■ Contrary to Carpenter's suggestion, however, we do not find the firearm of-

---

**3.** Nor did Carpenter's counsel demand that Carpenter not be interrogated in counsel's absence. Arguably, if counsel had done so, that might, depending on the circumstances, constitute an invocation of Carpenter's Fifth Amendment right to the assistance of counsel during custodial interrogations *about any subject matter. Compare McNeil,* 111 S.Ct. at 2212 (Stevens, J., dissenting) (observing that a suspect or his lawyer can invoke the Fifth Amendment right to have the assistance of counsel during custodial interrogations by expressing that wish when invoking the Sixth Amendment right to counsel at a preliminary hearing: "If petitioner in this case had made such a statement ... the entire offense-specific house of cards that the Court has

erected today would collapse, pursuant to our holding in *Arizona v. Roberson....*") *with id.* at 2211 (majority opinion) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'—which a preliminary hearing will not always, or even usually, involve....") *and United States v. Wright,* 962 F.2d 953, 955 (9th Cir.1992) ("[T]he request by [the defendant's] counsel at a plea hearing to be present at interviews with her client did not trigger the *Miranda–Edwards* rule for subsequent custodial interrogations regarding unrelated criminal activity."). We need not, and therefore do not, decide that question today.

fense and the state burglary offense to be "inextricably intertwined" or "extremely closely related." The state burglary charge predated the federal firearm charge; a warrant was issued for his arrest on the burglary charge before the events leading up to the firearm charge. In fact, the only connection between the two crimes is that Carpenter possessed the firearm when he was arrested on the warrant for the burglary charge. To be sure, Carpenter does not even argue that the firearm was in any way linked to the burglary. Accordingly, we hold that Agent Redman did not infringe upon Carpenter's Fifth or Sixth Amendment rights when she interrogated Carpenter about the firearm. The district court correctly denied the motion to suppress.

## II. THE CRACK PIPE

When the officers discovered the firearm on the back seat floorboard, they found a crack pipe beside it. The pipe had recently been used to smoke crack, and there was fresh residue on it. Carpenter moved to exclude the pipe or any reference to it. The district court granted the motion in part and denied it in part. The district court excluded the pipe itself, concluding that the prejudicial effect of its admission—in light of the fact that it had residue on it, had been recently used to smoke crack, and came from Carpenter's pocket—outweighed its value to the government. However, the court allowed the government witnesses to testify that they discovered the pipe and that Carpenter confessed to having placed it on the back seat floorboard. The district court also admitted into evidence a photograph of the back seat floorboard of the police cruiser depicting the pipe along side of the firearm.

Carpenter attacks the district court's ruling in two ways. First, he argues that the prejudicial impact of that evidence substantially outweighed its probative value, and second, that the evidence constituted extrinsic evidence which should have been excluded under Rule 404(b) of the Federal Rules of Evidence. In support of affirmance, the government contends that the crack pipe was intrinsic evidence, so intertwined with the possession and recovery of the firearm as to be part of a single criminal episode, and that evidence concerning the crack pipe was admissible to corroborate the confession that Carpenter later recanted.

### A.

The district court wisely decided to exclude the actual pipe, recognizing that its prejudicial effect outweighed its probative value. The pipe had no evidentiary value other than to corroborate Carpenter's later recanted confession. Yet admitting the actual pipe into evidence would have created the substantial risk that the jury would have inferred that Carpenter had smoked crack cocaine on the day of his arrest, a fact clearly not relevant to the firearm offense with which Carpenter was charged. Indeed, the government appreciated the risk that the evidence would be considered by the jury as a reflection of Carpenter's bad character. It advised the court that it had no intention to offer the pipe into evidence "for any purpose to show that [Carpenter] smoked 'crack' cocaine or anything, but that this item is a corroborative tool that corroborates the statement that he made about the firearm."

We agree with the government that evidence that a crack pipe was discovered along side of the firearm on the back seat floorboard was relevant insofar as it corroborated Carpenter's recanted confession. *Cf. United States v. Blake*, 941 F.2d 334, 338 (5th Cir.1991) (because the defendant disavowed his confession, extrinsic evidence of unrelated drug activity to which the defendant allegedly confessed as part of his confession to the charged crime was admissible on rebuttal to corroborate officers' testimony about the confession). The government was entitled to show the jury that the physical evidence substantiated Carpenter's confession to Agent Redman. In that way, the government could establish that Carpenter had not fabricated the confession, as Carpenter later claimed he had done. Thus, although the court properly excluded the pipe itself, it did not err

by admitting the testimony about, and a photograph of, the crack pipe. In comparison with the actual pipe, the testimony and photograph were substantially less prejudicial, yet highly probative.

### B.

■ Evidence that the crack pipe was discovered beside the firearm was plainly intrinsic, not extrinsic, evidence, because Carpenter's possession of it was "inextricably intertwined" with his possession of the firearm; both were part of the "single criminal episode" involving his arrest. *See United States v. Torres*, 685 F.2d 921, 924 (5th Cir.1982) (holding that evidence of sample drug transactions which were "necessary preliminaries" for the charged transaction was relevant intrinsic evidence and therefore admissible). Intrinsic evidence of this kind is not excludable under Rule 404(b). *Id.; United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990). Thus, the district court committed no error in denying Carpenter's motion to exclude the crack pipe on that basis.

### III. SENTENCING

A separate sentencing enhancement information was filed with the court, pretrial, alleging that Carpenter was an "armed career criminal" within the meaning of 18 U.S.C. § 924(e)(1). His guideline range for the offense was 33–41 months taking into account his criminal history (category 5), but as an armed career criminal, Carpenter was subject to a mandatory minimum sentence of 180 months.

The government moved the court for an upward departure on the ground that Carpenter's criminal history score under the guidelines did not adequately depict the severity of Carpenter's criminal past. Although Carpenter objected generally to an upward departure, Carpenter did not lodge any objections to the matters presented in the Presentence Investigation Report or otherwise contest the accuracy of its contents. Carpenter did argue that the government had failed to prove, by a preponderance of the evidence, that he had committed the burglary offense for which he was arrested and which led to the firearm charge.

In imposing sentence, the district court concluded that an upward adjustment from the mandatory minimum 180 months was appropriate in light of Carpenter's extensive criminal history:

> The Guideline range in this case, in the Court's view, because of the statute, is 180 months to 180 months, in effect. It would be the Court's determination that the Defendant's criminal history is not adequately reflected and that a—an upward departure would be appropriate. To depart across the chart in the criminal history category does not really seem applicable, since the criminal history category doesn't extend. So the Court would determine that the 180–month range under a Category 5 would be a Level 30. A departure would be appropriate upwards two levels to a 32, where the range would then be 188 to 235 months.

R. 6 at 16. The district court imposed a sentence of 230 months incarceration.

### A.

■ Carpenter first challenges the upward departure on the ground that the district court erred in enhancing his sentence based on the alleged burglary offense for which he was arrested. He argues that the government failed to prove, by a preponderance of the evidence, that he committed that offense.[4] We have re-

---

**4.** The burglary charge was dismissed by the state because of insufficient evidence. That fact is of no moment for sentencing purposes, however; *see United States v. Lee*, 955 F.2d 14 (5th Cir.1992) (approving upward departure based on history of similar offenses not prosecuted to conviction); the standard of proof necessary to support an enhancement in this circuit—preponderance of the evidence—is not nearly as demanding as the "beyond a reasonable doubt" standard necessary to support a conviction. *See generally Kinder v. United States*, —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992) (White, J., dissenting from the denial of certiorari) (urging Court to resolve the conflict in the circuits on the standard of proof necessary to support factual findings at sentencing).

viewed the sentencing transcript and find no merit in that claim.

### B.

■ Carpenter submits that the upward departure was "cruel and unusual" because it resulted in a double penalty for the same conduct. He observes that his sentence was already enhanced under the armed career criminal statute, which imposes a mandatory minimum 180 month sentence on a defendant who, with three prior convictions, is convicted of carrying a firearm. In Carpenter's view, the district court was penalizing him twice based on the seriousness of his criminal history: once by enhancing his guideline sentence to 180 months pursuant to § 924(e), and a second time by departing upward from 180 to 230 months.

Carpenter's argument is foreclosed by this circuit's decision in *United States v. Fields*, 923 F.2d 358, 362 (5th Cir.1991). In *Fields* we held that an upward departure of a sentence already enhanced under 18 U.S.C. § 924(e)(1) was permissible. Like this case, the applicable guideline range in *Fields* was 33–41 months, and the defendant was subject to the sentence enhancement under 18 U.S.C. § 924(e), requiring the imposition of a mandatory minimum 180 months. The district court in *Fields* departed upwards based on the defendant's criminal history and imposed a sentence of 204 months. This court affirmed, writing:

> The guidelines themselves acknowledge that a departure is in order when a defendant's criminal history score "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."

*Id.* (quoting U.S.S.G. § 4A1.3). We observed that § 924(e) authorizes a mandatory *minimum* sentence of 180 months, but allows a maximum sentence of life in prison. Thus, a district court has the discretion to impose a sentence in excess of 180 months when the circumstances warrant it.

Carpenter's reliance on *United States v. Munoz–Romo*, 947 F.2d 170 (5th Cir.1991) is misplaced. That case merely holds that a district court cannot impose *separate* sentences for violations of 18 U.S.C. § 922(g) [possession of a firearm by a convicted felon] and 18 U.S.C. § 924(e) [mandatory minimum 15 year sentence for persons convicted under 922(g) who also have three prior felony convictions]. We explained that § 924(e) is an enhancement statute, and "an enhanced sentence is designed to be used instead of the regular, or shorter, sentence." *Id.* at 181. Here the district court imposed a single sentence in conformity with the mandatory minimum.

### C.

"Since [Carpenter's] maximum sentence in the guideline range was 41 months, and the minimum sentence called for by § 924(e)(1) is fifteen years (180 months), 180 months became [Carpenter's] guideline sentence." *Fields*, 923 F.2d at 361. In his third argument attacking the sentence, Carpenter contends that the district court did not adequately articulate its reasons justifying a 230 month sentence, an upward departure of 50 months from the 180 month guideline sentence. Carpenter finds support for his argument in a line of Fifth Circuit cases demanding that when a district court departs from the guideline sentence based on the defendant's criminal history, it explicitly articulate the aggravating factors justifying the upward departure. *E.g., United States v. Martinez–Perez*, 916 F.2d 1020, 1024 (5th Cir.1990) (district court erred in making upward departure because it did not articulate why the defendant's criminal history score did not adequately reflect the defendant's criminal past); *United States v. Jones*, 905 F.2d 867, 870 (5th Cir.1990) ("A recital of past convictions followed by the statement that the Guidelines do not adequately reflect this history or deter recidivism, as here, amounts to little more than an expression of personal disagreement with the Guidelines."); *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989) (vacating sentence and remanding so that district court could articulate basis for upward departure). *But see United States v. Harvey*, 897 F.2d 1300, 1306 (5th Cir.1990) (uphold-

ing upward departure in the face of defendant's argument that district court failed to expressly articulate why the criminal history category did not adequately reflect defendant's criminal past).

A district court has the discretion to impose a sentence in excess of the recommended guideline range provided: (1) that the court articulates acceptable reasons justifying the upward departure, and (2) that the departure is reasonable. *Fields*, 923 F.2d at 361 (citing 18 U.S.C. § 3742(e)(3), (f)(2)). One acceptable reason for a departure is that the "Criminal History Category" into which the defendant falls does not "adequately reflect the seriousness of the defendant's past criminal conduct...." U.S.S.G. § 4A1.3. By way of example, this might happen when a defendant's prior convictions are stale (i.e., beyond the limitations period), when a defendant's prior sentences have been consolidated, when the defendant has been afforded extreme leniency by a sentencing court, or when the defendant has committed offenses while on bail, parole or probation.[5] *Jones*, 905 F.2d at 869.

At Carpenter's sentencing, the government argued that an upward departure was warranted on this basis. Relying on the Presentence Investigation Report, the government explained that two convictions, a juvenile adjudication for burglary and a misdemeanor conviction for theft, were not counted against Carpenter because they were outside the limitations period. The theft conviction was a violent purse snatching which would have qualified as a felony but was instead filed as a misdemeanor. Carpenter pled guilty to the offense and received a probationary sentence, but because of subsequent misconduct, his probation was revoked. That saved him from other criminal charges: A purse snatching (theft) charge and a drug possession charge were dropped by the state once Carpenter's probation was revoked. The guidelines also did not account for Carpenter's burglary offense which, as

we have indicated in Part III.A. of this opinion, the government proved by a preponderance of the evidence. Finally, the government pointed out that Carpenter had been charged with murder and pled guilty to the lesser offense of voluntary manslaughter, receiving an 18 year sentence of which he served six before being paroled.

From the context of the court's sentencing decision, it is abundantly clear that the district court agreed with the government that an upward departure was warranted based on Carpenter's criminal history. Critically, Carpenter's criminal history was the only matter considered by the court at sentencing, and Carpenter did not contest the government's position. True, the district court did not expressly adopt the government's arguments. *See United States v. Lange*, 91–8147, slip op. at 6–7 (5th Cir. Dec. 4, 1991) (unpublished disposition) [951 F.2d 344 (table)]. But there is no room for doubt that the court based its decision to depart on the grounds urged by the government. This is not a case like *Jones* in which we could not decipher why the district court concluded that "aspects of the defendant's criminal history [were] not adequately considered by the Guidelines." 905 F.2d at 870. Nor is this a case like *Martinez–Perez* in which we were dissatisfied with the following explanation by a district court: "The Court has departed a few months from the guidelines because the guidelines do not take into consideration appropriately your criminal involvement, particularly matters involving the same type of offense." 916 F.2d at 1024. In *Martinez–Perez*

> all of [the defendant's] prior convictions of any significance were considered in calculating his Criminal History Category. The only prior conviction outside the limitations periods of § 4A1.1 was a petty shoplifting conviction in 1976. While we have previously stated that offenses outside the limitations period may be considered in the district court's decision to depart from the Guidelines, [the defen-

---

5. We make no effort to catalog all of the potential bases for concluding that a defendant's

criminal history score is inadequate.

dant]'s one long-past misdemeanor conviction is hardly sufficient justification for departure.

*Id.* at 1025. In Carpenter's case, as the government illustrated and the district court agreed, Carpenter's criminal history score did not adequately portray his criminal past. Two convictions were unaccounted for because of the limitations period, he had several more prior convictions than needed to qualify as an armed career criminal, he had committed offenses while on probation and parole, and he had received especially lenient treatment for killing a man, all reasons enough to justify an upward departure. Yet these aggravating factors were not considered in ascertaining the applicable Criminal History Category. The district court was justified, therefore, in relying on these factors to support the upward departure.[6] *See Fields*, 923 F.2d at 361.

■ We also believe that the 50 month upward departure was reasonable. In selecting a 230 month sentence, the district court first considered, in line with our case law, an adjustment of Carpenter's Criminal History Category from a category 5 to a category 6. *See Jones*, 905 F.2d at 870 (vacating sentence and remanding so that district court could consider lesser adjustments of the criminal history category); *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989) ("[T]he sentencing judge should state definitively that he or she has considered lesser adjustments of the criminal history category and must provide reasons why such adjustments are inadequate."). *But see Harvey*, 897 F.2d at 1306 ("[T]he Court's holding [in *Lopez* ] was narrow, and was confined to those cases with 'low criminal history scores.' "). Because Carpenter was subject to the mandatory minimum sentence of 180 months required by 18 U.S.C. § 924(e)(1), however, the district court recognized that adjusting the Criminal History Category was not workable: Carpenter's guideline range would

have shifted from a range of 33 to 41 months under Criminal History Category 5 (and Offense Level 14), to a range of 37 to 46 months under Criminal History Category 6 (and the same Offense Level 14), still below the mandatory minimum 180 month sentence that had to be imposed.

Unable to follow the directive of *Lopez* and *Jones*, the district court extrapolated a formula of its own. It turned to the Guidelines "Sentencing Table," and under category 5, located the range within which a sentence of 180 months would fall. That corresponded to an offense level of 30 (which provided for a guideline range of 151 to 188 months). The court then reasoned that Carpenter's criminal history warranted a two point upward adjustment to an offense level of 32, providing for a guideline sentencing range of 188 to 235 months. The court chose a sentence of 230 months, comfortably within its newly formulated guideline range.

We know of no authority sanctioning the district court's methodology. Likewise, we know of no authority condemning it. Because guideline sentencing ranges recommended by the Sentencing Table do not account for the § 924(e) enhancement, the district court was left to improvise. Although we do not ratify the methodology employed by the district court, we nevertheless affirm the sentence because, ultimately, the departure reflected a reasonable upward adjustment. *See United States v. Webb*, 950 F.2d 226, 232 (5th Cir.1991) ("We hold that the amount of the departure, five years [60 months], was reasonable, particularly in light of the facts of Webb's past and that his base sentence was the *minimum* statutory penalty of fifteen years.") (emphasis in original); *Fields*, 923 F.2d at 362 (24 month upward departure from the mandatory minimum 180 month sentence required by § 924(e) was reasonable); *United States v. Geiger*, 891 F.2d 512, 513–14 (5th Cir.1989) (upholding a 120 month sentence even though

---

**6.** We would certainly have preferred that the district court restate the reasons why Carpenter's criminal history score was not an accurate portrayal of his criminal past. Ordinarily, we would vacate and remand. We need not do so

in this case, however, because Carpenter did not contest the government's arguments and the Presentence Investigation Report's factual assertions concerning his criminal history.

guidelines recommended a maximum sentence of 27 months), *cert. denied,* 494 U.S. 1087, 110 S.Ct. 1825, 108 L.Ed.2d 954 (1990); *accord United States v. Briggman,* 931 F.2d 705, 710 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991) (upward departure of fifteen years from statutory minimum sentence of fifteen years reasonable based on defendant's past criminal history). In view of the unique aspects of Carpenter's criminal history, we find nothing unreasonable about the 50 month upward departure from the 180 month guideline sentence.[7]

AFFIRMED.

---

7. We simply decide the case before us today. Nothing in this opinion should be read to intimate that a 50 month upward departure from a 180 month guideline sentence is reasonable *per se.*