UNITED STATES of America, Plaintiff–Appellee,

v.

Keith Allen FORD, Defendant–Appellant.

No. 92–8396.

United States Court of Appeals, Fifth Circuit.

July 12, 1993.

J. Marlin Blackledge, Waco, TX (Court-appointed), for defendant-appellant.

Diane Kirstein, Asst. U.S. Atty., Richard L. Durbin, Jr., John A. Phinizy, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, TX, for plaintiff-appellee.

Before REAVLEY, KING and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

This is another appeal of the application of the sentencing guidelines.

Keith Allen Ford fatally shot Joe Coffman when the latter showed up at a mutual friend's house with a gun, "looking for" Ford. Ford, who had previously been convicted of four controlled substances offenses, pled guilty to one count of possession of a firearm by a convicted felon. 18 U.S.C. § 924(e). Ford was sentenced to 400 months imprisonment and five years supervised release, based in part on the district court's characterization of his possession of a firearm as a "crime of violence" for purposes of U.S.S.G. § 4B1.1.

On prior appeal, this court held that the district court erred by characterizing Ford's possession of a firearm as a "crime of violence" for purposes of computing his base offense level, and vacated and remanded the case for resentencing. On remand, the district court determined that Ford's base offense level was 34 (not 37, as it had previously determined). U.S.S.G. § 4B1.4(b)(3)(A). Combined with his criminal history category VI, this yielded a guideline imprisonment range of 262 to 327 months. After upwardly departing on the grounds that (1) Coffman was killed by the firearm in Ford's possession, and (2) Ford's criminal history category underrepresented his actual criminal behavior and recidivism,[1] the district court sentenced Ford to 360 months imprisonment, plus five years supervised release. Ford appeals the district court's sentencing on remand. We affirm.

---

1. The district court determined that Ford's criminal history score was 20. Criminal History Category VI includes all criminal history scores of 13 or above. U.S.S.G. ch. 5, table A.

## I. DISCUSSION

■ Ford's sentence must be upheld unless it was imposed in violation of the law, resulted from an incorrect application of the sentencing guidelines, or is unreasonable and outside the range of the applicable guidelines. 18 U.S.C. § 3742(f); *United States v. Garcia,* 962 F.2d 479, 480–81 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). Interpretation of the guidelines is a question of law, subject to *de novo* review. *Garcia,* 962 F.2d at 481. Factual findings made in the course of applying the guidelines are subject to review only for "clear error." 18 U.S.C. § 3742(e); *Garcia,* 962 F.2d at 481.

### A. FORD'S BASE OFFENSE LEVEL.

■ Section 4B1.4(b)(3) provides that:
The offense level for an armed career criminal is the greate[r] of:

. . . .

(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

(B) 33, otherwise.

On remand, the district court determined that Ford's base offense level, under § 4B1.4(b)(3)(A), was 34 because he had possessed the firearm "in connection with a crime of violence." *Id.* This determination was in accord with dicta in our prior panel's opinion.

Ford challenges this determination, based upon U.S.S.G. § 4B1.2 (Definitions of Terms Used in Section 4B1.1) Application Note 2, which reads, in part:

The term "crime of violence" does not include the offense of unlawful possession of a firearm by a felon. Where the instant offense is the unlawful possession of a firearm by a felon ... and ... the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), § 4B1.4 (Armed Career Criminal) will apply.

Ford argues that our prior holding that his charged conduct did not constitute a "crime of violence," coupled the fact that there were no controlled substances nor § 5845(a) firearms involved, requires a finding that his base offense level is 33, as provided by § 4B1.4(b)(3)(B).

We disagree. While § 4B1.1 explicitly calculates the base offense level based on "the instant offense of conviction," § 4B1.4(b)(3) does not. The language used in the latter section is "if the defendant used ... the firearm ... *in connection with* a crime of violence ..." (emphasis added). Here, while Ford's "instant offense of conviction"—possession of a firearm by a felon—did not constitute a "crime of violence" for purposes of § 4B1.1, his possession of the Mossberg shotgun was certainly "in connection with a crime of violence"—to wit, the fatal shooting of Joe Coffman. Therefore, we hold that the district court properly applied U.S.S.G. § 4B1.4(b)(3)(A) and correctly calculated Ford's base offense level at 34.

### B. FORD'S CRIMINAL HISTORY SCORE.

■ This court will review *de novo* the district court's finding that Ford's prior convictions were unrelated. *See Garcia,* 962 F.2d at 481; *see also United States v. Lopez,* 961 F.2d 384, 385 (2d Cir.1992); *United States v. Houser,* 929 F.2d 1369, 1373 (9th Cir.1990).

■ The PSR and the district court both determined that Ford had a criminal history score of 20, placing him well above the minimum score for Category VI, the highest possible category. Twelve of the 20 points thus assessed were a result of the district court treating four prior state-court methamphetamine delivery convictions as "[p]rior sentences imposed in unrelated cases" for purposes of § 4A1.1(a).

Section 4A1.2(a)(2) provides: "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." The official commentary to § 4A1.2 states:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the

defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2 app. note 3.

Ford argues that his four prior state-court methamphetamine delivery convictions should be considered "related" for purposes of §§ 1B1.3 and 4A1.2(a) & n. 3. Based upon *Garcia, supra,* we disagree.

In *Garcia,* this court considered the "relatedness" of two prior state-court convictions. There, both convictions were for separate instances of heroin delivery over a nine-day period "in the same vicinity." In addition, the two indictments had consecutive numbers and were filed on the same day, the same attorney represented Garcia in both causes, the causes were heard in the same court at the same time, the plea agreements for each cause referred to the other, and the ten-year sentences for each conviction were concurrent. This court found little merit to Garcia's argument that the transactions were part of a "common scheme or plan":

> Although the facts surrounding the cases may be similar, similar crimes are not necessarily related crimes. . . .
>
> Garcia executed two distinct, separate deliveries of heroin. Although the crimes may have been temporally and geographically alike, they were not part of a common scheme or plan. . . .

962 F.2d at 482 (citations omitted). As for Garcia's arguments that the two convictions were "related" because they were "consolidated for trial and sentencing," this court concluded:

> This court has already rejected the proposition that cases must be considered consolidated simply because two convictions have concurrent sentences. Likewise, we also rejected the notion that sentencing on two distinct cases on the same day necessitates a finding that they are consolidated. . . .

Although the concurrent sentences and sentencing on the same day are factors to consider when evaluating whether cases are consolidated, we see little reason automatically to consider cases to be consolidated where state law is to the contrary. Instead, a district court must determine for itself whether the crimes in fact were related. . . . [T]he evidence does not establish that the state cases were consolidated for trial or sentencing. The state did not move to consolidate the cases; and the state court treated the two convictions separately, entering separate sentences, judgments and plea agreements.

*Id.* at 482–83 (citations and footnote omitted).

*Garcia* disposes of most of Ford's complaints. And, to the extent that Ford's situation in distinguishable from that in *Garcia,* that distinction is not significant enough to find that the prior convictions were "related." While all four of Ford's charges arose from sales to the same undercover officer during a six-day period, whereas Garcia made two sales to two different officers over a nine-day period, and two of Ford's four sales occurred on the same date and at the same motel, whereas Garcia's sales occurred in distinct locations, these are distinctions without a difference. Each sale was a separate transaction, separated by hours, if not days. The fact that the buyer was the same did not make the sales "related" any more than if Ford made four separate trips to the same H.E.B. in one week to buy groceries—there was no common scheme or plan, simply convenience and experience.

C. PROPRIETY OF THE DISTRICT COURT'S UPWARD DEPARTURE.

█ The sentencing court may impose sentences outside the range. established by the sentencing guidelines in cases presenting "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553; U.S.S.G. § 5K2.0; *United States v. Fitzhugh,* 984 F.2d 143, 147 (5th Cir.1993). The district court must state on the record its reasons for

departure from the guideline range. *Fitzhugh*, 984 F.2d at 147 (citing 18 U.S.C. § 3553(c)). And any such departure must be reasonable. *Id.*

The district court departed upward from the guideline range of 262–327 months to impose a sentence of 360 months, based upon the facts that (1) Coffman's death "resulted from [Ford's] involvement in the offense," and (2) Ford's "Criminal History Category VI under-represents his criminal behavior and recidivism to criminal involvement."

### 1. *Upward Departure Based Upon Resulting Death.*

Section 5K2.1 provides that "[i]f death resulted, the court *may* increase the sentence above the authorized guideline range" (emphasis added). We find no abuse of discretion in the district court's decision to do so.

### 2. *Upward Departure Based Upon Prior Criminal History.*

■ Section 4A1.3 provides, in part, that the sentencing court *may* consider an upward departure:

[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes.... [or].... that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category....

Section 5K2.0 further counsels:

.... [T]he court *may* depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that ... the guideline level attached to that factor is inadequate.

(emphasis added).

The district court determined that Ford's Criminal History Category VI underrepresented his criminal history and propensity for future violations. Ford's criminal history score of 20 is higher than the minimum score of 13 for Category VI, though it is by no means exaggerated. *Compare Fitzhugh*, 984 F.2d at 147 (criminal history score of 57).

The base offense level for unlawful firearm possession is 12. U.S.S.G. § 2K2.1(a)(7). The base offense level for a convicted felon in (unlawful) possession of a firearm is 20. *Id.* § 2K2.1(a)(4). The minimum base offense level for an "armed career criminal" is 33. *Id.* § 4B1.4(b)(3)(B). Clearly, the guidelines incorporate Ford's criminal history into the calculation of the base offense level. Ford's criminal history is again incorporated when his sentencing range is calculated using Criminal History Category VI, rather than some lower category.

For the district court to find that the guideline range of 262 to 327 months does not adequately reflect Ford's criminal history and propensity to future criminal activity requires justification. The Guidelines' treatment of Ford as an "armed career criminal" with a Criminal History Category VI (as opposed to a person in illegal possession with no criminal history) increases his guideline sentencing range from 10–16 months to 235–293 months—a significant increase based solely on Ford's prior criminal record.

The Government cites *United States v. Carpenter*, 963 F.2d 736 (5th Cir.1992), in support of the reasonableness of the district court's upward departure based upon criminal history. There, Carpenter's guideline range for the underlying offense was 33–41 months, but he was subject to a statutory minimum sentence of 180 months as an "armed career criminal." *Id.* at 742. The district court then departed upward, adding 50 months based upon Carpenter's extensive criminal history. *Id.* This court found the district court's departure to be "reasonable." *Id.* at 744. By comparison, the Government argues, Ford's sentence was only increased by 33 months.

The Government's argument prevails, despite this court's admonition in *Carpenter* that it was "simply decid[ing] the case before it today [and that] [n]othing in this opinion should be read to intimate that a 50 month upward departure from a 180 month guideline sentence is reasonable *per se.*" *Id.* at 746 n. 7. Like Carpenter, Ford had prior offenses which were not included in the crim-

inal history calculation. In Carpenter's case, because they were stale, in Ford's, because of his age. Ford has also exhibited continued criminal propensity, even after his four-count conviction in Bell County and subsequent imprisonment, to the point of repeated parole violations.

In sum, we think that the district court was well within the discretion afforded it by the Guidelines to enhance Ford's sentence based upon both Coffman's death and Ford's criminal history.

## II. CONCLUSION

Ford is an armed career criminal in every sense of the word, and does not dispute the applicability of 18 U.S.C. § 924(e) or U.S.S.G. § 4B1.4. As we read § 4B1.4(b)(3)(A), the district court, on remand, correctly determined Ford's base offense level. We likewise find no fault in the district court's calculation of Ford's criminal history category, nor in the district court's upward departure.

AFFIRMED.